UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL STORY, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>   v.<br><br>MAMMOTH MOUNTAIN SKI AREA, LLC, a Delaware limited-liability company,<br><br>        Defendant. | No.  2:14-cv-02422-JAM-DAD<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO STAY** |

    Defendant Mammoth Ski Area, LLC ("Defendant") has requested the Court stay (Doc. #17) the current action pursuant to the primary jurisdiction doctrine in order to allow the Federal Communications Commission ("FCC") to resolve petitions currently pending before it.[1]  In his opposition (Doc. #28), Plaintiff Paul Story ("Plaintiff") argues a stay would not be proper under the circumstances and would unduly delay the proceedings.

---

[1] This motion was determined to be suitable for decision without oral argument.  E.D. Cal. L.R. 230(g).  The hearing was scheduled for April 8, 2015.

1          I.   FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

2          Defendant operates, manages and owns a ski resort in Mammoth

3     Lakes, California.  Plaintiff alleges that on two separate

4     occasions in April 2014 he received prerecorded or artificial

5     voice telephone calls on his cellular phone from Defendant.  The

6     calls were advertisements to purchase season passes to

7     Defendant's ski resort.  Plaintiff alleges that he "had never

8     given any signed authorization to anyone expressly permitting

9     [Defendant] to use his cellular-telephone number for

10    telemarketing or advertising purposes."  Comp. ¶¶ 9-10.

11         Plaintiff's Complaint contains class action allegations and

12    one cause of action for violation of the Telephone Consumer

13    Protection Act ("TCPA"), 47 U.S.C. § 227.

14

15                         II.   OPINION

16    A.   Request for Judicial Notice

17         Plaintiff requests judicial notice (Doc. #30) of various

18    notices and reports of the FCC as well as a judicial order in

19    another district court case.  In addition, Defendant requests the

20    Court take notice (Doc. #35) of its petition filed with the FCC,

21    a House Report and a public notice issued by the FCC in

22    connection with Defendant's petition.

23         Federal Rule of Evidence 201 permits courts to take judicial

24    notice of matters that "can be accurately verified and readily

25    determined from sources whose accuracy cannot be reasonably

26    questioned."  Documents that "are administered by[,] or publicly

27    filed with[,] [an] administrative agency" are properly subject to

28    judicial notice under Rule 201.  Tovar v. Midland Credit Mgmt.,

2

1  2011 WL 1431988, at *2 (S.D. Cal. 2011) (taking judicial notice

2  of reports and orders of the FCC, and of an FCC notice of

3  proposed rulemaking, under Rule 201); see also U.S. v. Woods, 335

4  F.3d 993, 1001 (9th Cir. 2003) (taking judicial notice of the

5  Federal Register).  Similarly, judicial notice may also be taken

6  of official acts of the legislative, executive, or judicial

7  branch of the United States government, including court records.

8  See Bryant v. Carleson, 444 F.2d 353, 357 (9th Cir. 1971) (taking

9  judicial notice of various court actions).

10      The Court grants both of these requests for judicial notice

11  pursuant to Rule 201.

12      Defendant also filed an ex parte application to file a

13  statement of recent authority (Doc. #40) regarding a comment by

14  the United States Chamber of Commerce to the FCC.  In addition,

15  Plaintiff filed a request for judicial notice (Doc. #43)

16  regarding the lifting of a stay in another Eastern District Court

17  case where the parties jointly stipulated to the stay and were

18  nearing a potential settlement.  The Court does not find the

19  material underlying either request relevant to the issues

20  presented by this motion.  As such, these requests are both

21  DENIED.

22      B.   Legal Standard

23      "The primary jurisdiction doctrine allows courts to stay

24  proceedings or to dismiss a complaint without prejudice pending

25  the resolution of an issue within the special competence of an

26  administrative agency."  Clark v. Time Warner Cable, 523 F.3d

27  1110, 1114 (9th Cir. 2008).  The primary jurisdiction doctrine is

28  prudential; its invocation by a court does not indicate the court

1  lacks jurisdiction.  Id.  The doctrine can be invoked when "a

2  court determines that an otherwise cognizable claim implicates

3  technical and policy questions that should be addressed in the

4  first instance by the agency with regulatory authority over the

5  relevant industry rather than by the judicial branch."  Id.

6      "The doctrine of primary jurisdiction is not equivalent to

7  the requirement of exhaustion of administrative remedies."

8  Syntek Semiconductor Co. v. Microchip Tech. Inc., 307 F.3d 775,

9  780-81 (9th Cir. 2002).  Rather, "the doctrine of primary

10  jurisdiction is committed to the sound discretion of the court

11  when 'protection of the integrity of a regulatory scheme dictates

12  preliminary resort to the agency which administers the scheme.'"

13  Id. (quoting United States v. Gen. Dynamics Corp., 828 F.2d 1356,

14  1362 (9th Cir. 1987)).

15      Although the issue lies within a court's discretion, courts

16  have traditionally invoked the doctrine when the following

17  factors are present: (1) the need to resolve an issue that

18  (2) has been placed by Congress within the jurisdiction of an

19  administrative body having regulatory authority (3) pursuant to a

20  statute that subjects an industry or activity to a comprehensive

21  regulatory authority that (4) requires expertise or uniformity in

22  administration.  General Dynamics Corp., 828 F.2d at 1362;

23  Lambert v. Buth-Na-Bodhaige, Inc., No. 2:14-CV-00514-MCE, 2014 WL

24  4187250, at *1 (E.D. Cal. 2014).  "In considering the four

25  factors, the Court is mindful 'that the primary jurisdiction

26  doctrine is designed to protect agencies possessing

27  quasilegislative powers and that are actively involved in the

28  administration of regulatory statutes.'"  Lambert, 2014 WL

1 | 4187250, at *1 (quoting <u>Clark</u>, 523 F.3d at 1115).

2 |     C.   <u>Discussion</u>

3 |     Defendant contends the Court should stay this case pursuant

4 | to the primary jurisdiction doctrine to allow the FCC to formally

5 | respond to several petitions pending before it.

6 |     The TCPA prohibits any person from making "any call (other

7 | than a call made for emergency purposes or made with the prior

8 | express consent of the called party) using any automatic

9 | telephone dialing system or an artificial or prerecorded voice

10 | . . . to any telephone number assigned to a . . . cellular

11 | telephone service . . . ."  47 U.S.C. § 227(b)(1).  The relevant

12 | portion of the statute for the Court's present purposes is "prior

13 | express consent."

14 |     In 2012, the FCC issued a Report and Order entitled "In the

15 | Matter of Rules and Regulations Implementing the Telephone

16 | Consumer Protection Act of 1991."  27 F.C.C.R. 1830 (F.C.C. Feb.

17 | 15, 2012) (effective October 16, 2013) ("the 2013 rule change").

18 | In it, the FCC initially noted that "the TCPA is silent on the

19 | issue of what form of express consent – oral, written, or some

20 | other kind – is required for calls that use an automatic

21 | telephone dialing system or prerecorded voice to deliver a

22 | telemarketing message."  27 F.C.C.R. 1830, 1838 ¶ 21.  The FCC

23 | concluded that it had "discretion to determine, consistent with

24 | Congressional intent, the form of express consent required."  <u>Id.</u>

25 | The FCC then stated that, based on the volume of consumer

26 | complaints, statutory goals, and substantial support in the

27 | record, the form of "express consent" required under §227(b)(1)

28 | would thereafter be "prior express *written* consent" that is

1   signed and is "sufficient to show that the consumer: (1) received

2   'clear and conspicuous disclosure' of the consequences of

3   providing the requested consent . . . ; and (2) having received

4   this information, agrees unambiguously to receive such calls at a

5   telephone number the consumer designates.  27 F.C.C.R. 1830, 1837

6   ¶ 18, 1838 ¶ 20, 1844 ¶ 33.

7       Defendant contends "prior express consent," as interpreted

8   prior to the 2013 rule change, was given by Plaintiff, not

9   through the privacy policy on Defendant's website, but through

10  his provision of his phone number to Defendant.  Reply at pp. 7-

11  8.  Prior pronouncements from the FCC support Defendant's

12  contention that Plaintiff's provision of his number to Defendant

13  satisfied the "prior express consent" requirements of §227 prior

14  to the 2013 rule change.  In the Matter of Rules & Regulations

15  Implementing the Tel. Consumer Prot. Act of 1991, 7 F.C.C. Rcd.

16  8752, 8769 ¶ 31 (1992) ("persons who knowingly release their

17  phone numbers have in effect given their invitation or permission

18  to be called at the number which they have given, absent

19  instructions to the contrary"); Baird v. Sabre Inc., 995 F. Supp.

20  2d 1100, 1106 (C.D. Cal. 2014); Olney v. Job.com, Inc., No. 1:12-

21  CV-01724-LJO, 2014 WL 1747674, at *4-5 (E.D. Cal. 2014).

22      To determine whether Defendant violated the TCPA, the Court

23  will have to decide whether Defendant procured proper consent

24  before allegedly making the calls to Plaintiff.  This will

25  ultimately entail an analysis of exactly what effect the 2013

26  rule change had on the preexisting agreement or relationship

27  between these parties.

28      Defendant argues that several petitions filed with the FCC

1  are relevant to this critical issue, and, therefore, the Court

2  should stay the matter under the primary jurisdiction doctrine.

3  The Coalition of Mobile Engagement Providers ("CMEP") filed a

4  petition (Doc. #17-7) with the FCC in October of 2013 seeking

5  clarification that valid written consent obtained prior to the

6  2013 rule change is effective after the rule change and that

7  renewing consent is not required.  The Direct Marketing

8  Association ("DMA") filed its own petition (Doc. #17-9) the

9  following year requesting the FCC forbear from enforcing new

10 disclosure standards for previously existing written consent

11 agreements and seeking clarification that previously obtained

12 written consent is valid.

13     Plaintiff does not contest that issues regarding the

14 activity underlying his claim have been "placed by Congress

15 within the jurisdiction of an administrative body having

16 regulatory authority" (the FCC), or that interpretation of the

17 TCPA requires expertise or uniformity in administration. General

18 Dynamics Corp., 828 F.2d at 1362.  In opposing this motion to

19 stay, he argues that there is no issue that will affect this case

20 to be resolved by the FCC.  Plaintiff contends the CMEP and DMA

21 petitions concern the ongoing validity of written consents, which

22 Defendant never received from Plaintiff, and that even if relief

23 is granted by the FCC in response to those petitions, it can only

24 be implemented on a prospective basis, providing no support to

25 Defendant in the current action.  Opp. at pp. 1-2.

26     The 2013 rule change included a sunset provision that

27 allowed previously obtained consent to continue to suffice for an

28 approximately twelve-month period, but specifically stated that

1   once the new "written consent rules become effective, however, an

2   entity will no longer be able to rely on non-written forms of

3   express consent to make autodialed or prerecorded voice

4   telemarketing calls, and thus could be liable for making such

5   calls absent prior written consent."  In the Matter of Rules &

6   Regulations Implementing the Tel. Consumer Prot. Act of 1991, 27

7   F.C.C. Rcd. 1830, 1857 ¶ 68 (2012).

8        As an initial matter, the Court does not find support for

9   the proposition that Plaintiff's provision of his phone number to

10  Defendant constituted written consent.  In addressing the CMEP

11  and DMA petitions, the FCC may very well conclude that written

12  consents obtained before the rule change may continue to be

13  effective, however, this will not necessarily affect the

14  viability of Plaintiff's claim in this action.  This would

15  clearly undermine Defendant's position that the Court should

16  exercise its discretion to stay the case under the primary

17  jurisdiction doctrine.

18       However, as discussed in its reply, Defendant has filed its

19  own petition (Doc. #34-2) with the FCC, which Defendant contends

20  renders Plaintiff's arguments moot.  In his surreply (Doc. #42),

21  Plaintiff contends Defendant's petition raises no issue that

22  needs to first be resolved by the FCC.  Surreply at pp. 1-2.

23  Plaintiff argues that although the petition is disguised as one

24  seeking clarification, it is really an improper challenge to the

25  validity of the FCC's prior rulemaking and that Defendant's

26  contentions therein are frivolous.

27       The Court finds Defendant's petition directly addresses the

28  primary issue before the Court as it seeks "a ruling that 'prior

8

1   express consent' under [the TCPA] includes all consents obtained

2   prior to October 16, 2013 where the consumer has provided their

3   telephone number to the advertiser and the advertiser has a

4   contractual right to contact the consumer at that number."

5   Defendant's Petition at p. 1.  The FCC's ruling on this petition

6   will very likely address, to some extent, the merit of

7   Plaintiff's claim.  Therefore, the FCC's anticipated ruling on

8   Defendant's petition may conflict with, and thereby undermine,

9   the decision of this Court unless a stay is issued.

10      The comment period for Defendant's petition will close soon

11   and there is no evidence that Defendant continues to make these

12   calls, so Plaintiff will likely suffer no further damages.  The

13   Court thus finds it appropriate under these circumstances to

14   exercise its discretion pursuant to the primary jurisdiction

15   doctrine and stay the current matter because the issues are

16   better resolved "within the special competence of an

17   administrative agency."  Clark v. Time Warner Cable, 523 F.3d at

18   1114.  Defendant's motion to stay is GRANTED.

19                        III.   ORDER

20      For the reasons set forth above, the Court GRANTS

21   Defendant's motion to stay.  The parties shall update the Court

22   by joint submission within five court days of a ruling by the FCC

23   on Defendant's petition.  In addition, joint status reports shall

24   be filed with this Court every sixty days.

25      IT IS SO ORDERED.

26   Dated:  May 12, 2015

27

28
                                    _____
                                    JOHN A. MENDEZ,
                                    UNITED STATES DISTRICT JUDGE