JAURIGUE LAW GROUP
Michael J. Jaurigue (SBN 208123)
michael@jlglawyers.com
Abigail A. Zelenski (SBN 228610)
abigail@jlglawyers.com
David Zelenski (SBN 231768)
david@jlglawyers.com
300 West Glenoaks Boulevard, Suite 300
Glendale, California 91202
Telephone:  (818) 630-7280
Facsimile:  (888) 879-1697

GLANCY PRONGAY AND MURRAY LLP
Lionel Z. Glancy (SBN 134180)
Marc L. Godino (SBN 182689)
Mark S. Greenstone (SBN 199606)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone:  (310) 201-9150
Facsimile:  (310) 201-9160
E-mail:  info@glancylaw.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL STORY, individually and on behalf of all others similarly situated,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MAMMOTH MOUNTAIN SKI AREA, LLC, a Delaware limited-liability company,<br><br>　　　　Defendant. | Case No. 2:14-CV-02422-JAM-DB<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS-ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge:  Hon. John A. Mendez<br><br>Date: March 13, 2018<br>Time: 1:30 p.m.<br>Location: Robert T. Matsui United States Courthouse, Courtroom 6, 501 I Street, Sacramento, California 95814 |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on March 13, 2018 at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 6 of the United States District Court for the Eastern District of California, located at 501 I Street, Sacramento, California 95814, before the Honorable John A. Mendez, plaintiff Paul Story ("Plaintiff") will, and hereby does, move the Court for entry of an order granting final approval to the proposed class settlement of this action, which was preliminarily approved on November 7, 2017.

Plaintiff brings this motion pursuant to Fed. R. Civ. P. 23(e) on the grounds that the proposed settlement is fair, adequate, and reasonable. This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities appended hereto, the Declaration of Plaintiff's counsel Mark S. Greenstone, the Declaration of Plaintiff's counsel Abigail A. Zelenski, the Declaration of Defense counsel Jordan M. Heinz, the Declaration of Plaintiff Paul Story, the Declaration of the Settlement Administrator Dustin Mire, the [Proposed] Order[1], all pleadings and other documents on file in this action, and such other matters as may be presented at or in connection with the hearing on this Motion.

DATED:  January 26, 2018

JARIGUE LAW GROUP
GLANCY PRONGAY & MURRAY LLP

By: _s/ Mark S. Greenstone_
Mark S. Greenstone
Michael J. Jarigue
Abigail A. Zelenski
David Zelenski
Lionel Z. Glancy
Marc L. Godino
*Attorneys for Plaintiff*

---

[1] A [Proposed] Order will be lodged with the Court prior to the Final Approval Hearing.

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................ 1

II.  PROCEDURAL AND FACTUAL BACKGROUND ....................................... 1

III.  TERMS OF THE PROPOSED SETTLEMENT AGREEMENT .................................... 4

    A.  The Class .............................................................................. 4

    B.  The Settlement Fund ................................................................ 4

        1.  The Limited Release ........................................................ 5

IV.  IMPLEMENTATION OF THE PROPOSED SETTLEMENT ......................................... 5

V.  FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE ................................ 7

    A.  The Standard for Final Approval ...................................................... 7

    B.  This Non-Collusive Settlement is Entitled to a Presumption of Fairness........... 8

    C.  The Settlement is Fair, Adequate, and Reasonable .............................................. 9

        1.  The Strength of Plaintiff's Case Compared to the Risk, Expense, Complexity and Likely Duration of Further Litigation Favors Final Approval .............................................................................. 9

        2.  The Risks of Maintaining Class Action Status Through Trial Favors Final Approval ................................................................ 10

        3.  The Amount Offered in Settlement Favors Final Approval ................ 11

        4.  The Stage of the Proceedings Favors Final Approval .......................... 12

        5.  The Experience and Views of Counsel Favors Final Approval ........... 13

        6.  The Reaction of the Class Members of the Proposed Settlement Favors Final Approval ...................................................... 13

    D.  The Settlement Class Satisfies the Requirements of Rule 23.......................... 14

VI.  CONCLUSION................................................................................ 14

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>

*Aboudi v. T-Mobile USA, Inc.*,
   No. 12CV2169 BTM NLS, 2015 WL 4923602 (S.D. Cal. Aug. 18, 2015) ...................... 14

*Bais Yaakov of Spring Valley v. FCC*,
   852 F.3d 1078 (D.C. Cir. 2017) ....................................................................................... 10

*Bui v. Sprint Corp.*,
   2016 WL 727163 (E.D. Cal. Feb. 24, 2016) ...................................................................... 8

*Churchill Vill., L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ............................................................................................. 7

*Couser v. Comenity Bank*,
   125 F. Supp. 3d 1034 (S.D. Cal. 2015) ................................................................. 9, 11, 12

*Davis v. Brown Shoe Co., Inc.*,
   No. 113CV01211LJOBAM, 2015 WL 6697929 (E.D. Cal. Nov. 3, 2015) ...................... 13

*Dubeau v. Sterling Sav. Bank*,
   2013 WL 4591034 (D. Or. Aug. 28, 2013) ........................................................................ 8

*Goodwin v. Winn Mgmt. Grp. LLC*,
   No. 115CV00606DADEPG, 2017 WL 3173006 (E.D. Cal. July 26, 2017) ...................... 8

*Grannan v. Alliant Law Grp., P.C.*,
   No. C10-02803 HRL, 2012 WL 216522 (N.D. Cal. Jan. 24, 2012) ................................ 11

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ........................................................................................... 7

*In re EasySaver Rewards Litig.*,
   921 F. Supp. 2d 1040 (S.D. Cal. 2013) ............................................................................. 8

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) ............................................................................................. 7

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*,
   Report and Order, 27 F.C.C.R. 1830 (F.C.C. Feb. 15, 2012) ........................................... 2

*In re Syncor ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008) ........................................................................................... 7

*In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*,
  295 F.R.D. 438 (C.D. Cal. 2014) ...............................................................8

*In the Matter of Rules and Regulations Implementing the TCPA of 1991*,
  31 FCC Rcd. 11643 (Oct. 14, 2016) ....................................................3, 4, 5, 6

*Miller v. Sw. Airlines Co.*,
  No. C-12-5978-CRB, 2014 WL 11369764 (N.D. Cal. Mar. 21, 2014) ...............................8

*Morales v. Stevco, Inc.*,
  No. 1:09-CV-00704 AWI, 2011 WL 5511767 (E.D. Cal. Nov. 10, 2011) ............10, 11, 12

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ...................................................9, 12, 13

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,
  688 F.2d 615 (9th Cir. 1982) .......................................................7, 9, 11

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) .....................................................7, 8, 9, 12

*Satchell v. Fed. Express Corp.*,
  No. C 03 2878 SI, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) .......................................8

*Smith v. CRST Van Expedited, Inc.*,
  No. 310CV01116IEGWMC, 2012 WL 12953429 (S.D. Cal. Apr. 23, 2012) .....................8

*Story v. Mammoth*,
  2015 WL 2339437 (E.D. Cal. May 13, 2015) ....................................................3

*Wannemacher v. Carrington Mortg. Servs., LLC*,
  No. SACV122016FMOANX, 2014 WL 12586117 (C.D. Cal. Dec. 22, 2014) ..............9, 10

*Wren v. RGIS Inventory Specialists*,
  2011 WL 1230826 (N.D. Cal. Apr. 1, 2011)......................................................8

*Zakskorn v. Am. Honda Motor Co.*,
  No. 2:11-CV-02610-KJM, 2015 WL 3622990 (E.D. Cal. June 9, 2015) ..........................14

STATUTES

28 U.S.C. § 1715 ..............................................................................6

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This is a Telephone Consumer Protection Act ("TCPA") settlement in which the results truly speak for themselves.  Approximately 5,436 Class Members—representing 15.4% of the Class—have submitted claims.  ***None*** have objected, and ***none*** have opted out.  Based on the claims rate, Class Counsel estimate that the non-reversionary $3.75 million settlement fund will be fully exhausted by the March 20, 2018 Claims Deadline with each Claimant receiving approximately $375 to $500 (the maximum statutory damages).  The Proposed Settlement Agreement[2] is the result of a hard-fought battle waged in both the District Court and before the Federal Communications Commission ("FCC"), two rounds of mediation before two experienced TCPA mediators, and diligent execution of the notice and claims process.  It provides Class Members with outstanding relief and should be finally approved.

## II.   PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff's Motion for Preliminary Approval of Class-Action Settlement ("Preliminary Approval Motion"), incorporated by this reference, details the basis of Plaintiff's claims, the procedural history, and the Parties' settlement efforts.  (*See* Preliminary Approval Motion (ECF 72) at 9-12.)  Plaintiff focuses here on those matters pertinent to the instant Motion.

This case was filed on October 15, 2014.  (ECF 1.)  Plaintiff alleges a single cause of action under the TCPA based on two calls he received from Defendant Mammoth Mountain Ski Area, LLC ("Defendant" or "Mammoth") on his cellular telephone in April 2014.  (First Amended Complaint ("FAC") (ECF 71), ¶¶ 9–10.)  Both calls consisted of a prerecorded or artificial message advertising season passes to Mammoth. (*Id.*)  Plaintiff alleges that Mammoth placed these calls to Plaintiff and thousands of similarly situated Class Members without first obtaining express written consent with required disclosures as mandated under the TCPA

---

[2] The "Settlement Agreement" refers to the Stipulation of Settlement (ECF 73-1).   All capitalized terms herein shall have the definitions given to them in the Settlement Agreement unless otherwise stated.

pursuant to a 2012 FCC rule change that went into effect on October 16, 2013.  (*Id.*, ¶14; *see also In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 27 F.C.C.R. 1830 (F.C.C. Feb. 15, 2012).)

In December 2014, Mammoth moved to stay the Action pending a ruling by the FCC on various petitions concerning the consent requirement under the new rule. (*See generally* Mammoth's Motion to Stay (ECF 17).)  Mammoth argued in its Motion to Stay that Plaintiff had provided his number years ago when the voluntary provision of a number constituted consent.  Mammoth pointed to various petitions filed with the FCC in the wake of the rule change that sought either forbearance from enforcing the new rule or "clarification" that the new rule did not require the re-solicitation of consent from those consumers who had provided valid consent under the old rule. (Motion to Stay at 5:25–6:26.)  Prior to the hearing on the Motion to Stay, Mammoth also filed its own petition with the FCC, likewise arguing that the new rule did not require the re-solicitation of consent, as well as that the FCC had exceeded its authority in adopting the new rule.  (Reply in Support of Motion to Stay (ECF 34) at 3:1–25.)

To ensure an adequate factual record, in connection with this briefing, Plaintiff successfully moved *ex parte* to compel the deposition of Mammoth's Vice President of Database Marketing & Research, Tammy Innocenti, on the critical issue of consent. (Declaration of Mark S. Greenstone ("Greenstone Decl."), ¶14.)  Through this deposition Plaintiff explored the factual basis of Mammoth's contention that Plaintiff's provision of his telephone number constituted a form of consent that allegedly exonerates Mammoth from liability.  (*Id.*)  This involved detailed questioning regarding the functionality of, and disclosures contained on, the Mammoth website, including the Privacy Policy that Mammoth argued was intended to govern how it collects and uses personally-identifiable information including telephone numbers.  (*Id.*)

Based on Mammoth's petition, the Court granted the Motion to Stay, explaining that "[t]he FCC's ruling on this petition will very likely address, to some extent, the merit of

Plaintiff's claim." *Story v. Mammoth*, 2015 WL 2339437, at *4 (E.D. Cal. May 13, 2015). Although the action has been stayed since this time, it has been far from dormant.

On December 10, 2015, Mammoth filed an *ex parte* request with the FCC supplementing its petition and requesting alternative relief.  (Greenstone Decl. ¶16.)[3]  On January 20, 2016, Plaintiff filed his response to Mammoth's *ex parte* submission.  (*Id*.)  In October 2016, the FCC issued an order granting Mammoth's petition in part. (*Order, In the Matter of Rules and Regulations Implementing the TCPA of 1991*, 31 FCC Rcd. 11643, 11651 (Oct. 14, 2016).)  Specifically, the FCC granted Mammoth a "limited retroactive waiver[]" for calls made "from October 16, 2013[,] through October 7, 2015," to anyone who had provided some form of written consent to Mammoth.  (*Id.* at 11648–50.)  In other words, as to anyone who had consented in writing, before October 7, 2015, to receive calls from Mammoth, no TCPA liability arguably would attach for calls made through that date regardless of whether the writing failed to satisfy all of the disclosure requirements of the new rule.  The FCC's Order potentially implicates all of the calls at issue in this action, since the Class Period stops on December 31, 2014. (FAC, ¶14.)

After the FCC issued its ruling, Plaintiff and Mammoth engaged in a settlement dialogue spanning several months and ultimately participated in two all-day private-mediation sessions: one in March 2017 before the Hon. Leo Papas (Ret.) of Judicate West, and another in May 2017 before the Hon. Edward A. Infante (Ret.) of JAMS. (Greenstone Decl. ¶17.)  Both mediators have extensive TCPA experience and have successfully brokered numerous TCPA class action settlements.  (*Id.* ¶17; *see also* n. 6 *supra* )  In connection with the two mediations, Mammoth provided Plaintiff and both mediators with specific information as to when the telemarketing campaign had taken place, the number of calls placed, and the nature, quality and format of the Class Member contact information Mammoth possessed.  (*Id.*)  During the

---

[3] Defense counsel (Kirkland & Ellis LLP) filed Mammoth's initial petition.  The December 10, 2015 *ex parte* request was filed by Mayer Brown LLP.  Mammoth has thus been represented by *two* highly skilled national defense firms.  (Greenstone Decl. ¶16.)

second session, the Parties accepted Judge Infante's mediator proposal of a non-reversionary $3.75 million common-fund settlement.  (*Id.*)

## III.    TERMS OF THE PROPOSED SETTLEMENT AGREEMENT

### A.    The Class

The Proposed Settlement Agreement defines the Class as "all persons throughout the United States who, during the Class Period [*i.e.*, January 1, 2013, through December 31, 2014], received at least one prerecorded-or-artificial-voice telephone call on their respective cellular or landline telephones from [Mammoth], or from any person or entity acting on behalf of [Mammoth], made for a marketing or advertising purpose."  (Settlement Agreement, ¶19.) Mammoth placed 45,892 telephone calls during the Class Period to 35,335 Class Members, using their unique telephone numbers.  (Declaration of Dustin Mire on Behalf of Settlement Administrator Regarding Administration ("Mire Decl.") ¶3.)

### B.    The Settlement Fund

The Proposed Settlement Agreement mandates that Mammoth establish an all-cash, non-reversionary $3.75 million Settlement Fund, which is to cover Class Member claims, attorneys' fees and costs, administration costs and a class representative Service Award. (Settlement Agreement, ¶63.)  The Settlement Fund will be distributed *pro rata* to Authorized Claimants, with each Authorized Claimant receiving up to a $500, the TCPA statutory maximum.  (*Id.* ¶64(a).)

The Proposed Settlement Agreement authorizes a deduction of up to $937,500 in attorneys' fees, which is equal to 25% of the Settlement Fund, plus Class Counsel's costs. (Settlement Agreement, ¶87.)  Class Counsel have incurred $24,436.60 in costs.  (Greenstone Decl. ¶42.)  The Settlement Administrator estimates that the cost of administration will not exceed $142,000.[4]  (*Id.* ¶44.)  The Settlement Agreement also authorizes a class representative

---

[4] Plaintiff estimated a maximum administration cost of $120,000 in his Preliminary Approval Motion based on normal consumer class action claims rates, which are often well below 10%. (Mot. for Preliminary Approval at 6).  $142,000 assumes a 25% claims rate based on the exceptionally high claims rate to date.  Class counsel and the Claims Administrator believe that

Service Award of up to $5,000.  (Settlement Agreement, ¶86.)  After deducting these amounts, the Net Settlement Fund for distribution to the 35,335 Class Members comes to approximately $2,641,063.40.  (Greenstone Decl. ¶44.)  Based on the current 15.4% participation rate, Class Counsel estimate that the final participation rate will likely be in the range of 18 to 20% given that the claims deadline is not until March 20, 2018.  (*Id*.)  Assuming a 20% participation rate, the Settlement Fund will be fully exhausted and each Claimant will receive a *pro rata* distribution of $373.71.[5]  (*Id*.)  Indeed, even with a 100% participation rate each Claimant would receive an average of $74.74, an excellent result.  (*Id*.)

### 1. The Limited Release

Plaintiff contends that the Settlement Class will release **only** those claims that are based on allegations or facts set forth or asserted "in the First Amended Complaint *relating to prerecorded-or artificial-voice telephone calls* made by, or on behalf of, [Mammoth] for a marketing or advertising purpose during the Class Period."  (Settlement Agreement, ¶44 (emphasis supplied)).  Plaintiff believes this protects Settlement Class Members right to pursue litigation against Mammoth for any TCPA violations other than those set forth in the First Amended Complaint.

## IV.   IMPLEMENTATION OF THE PROPOSED SETTLEMENT

This Court entered its Order Granting Preliminary Approval of Class-Action Settlement ("Preliminary Approval Order" (ECF 77)) on November 9, 2017.  Since that date, the Parties have worked diligently with each other and the Claims Administrator to effectuate the terms of the Proposed Settlement Agreement.

---

an ultimate claims rate in the range of 18% to 20% is likely, and provide this estimate in an abundance of caution only.  A claims rate of 18% to 20% should result in administration costs of approximately $125,000.  (Greenstone Decl. ¶44 n. 2.)

[5] As a result, counsel believe there will likely be no residual funds for *cy pres*.  In the event a *cy pres* is necessary, the parties have agreed on Public Counsel, the nation's largest pro bono law firm with a division dedicated to consumer rights.  (*See* http://www.publiccounsel.org/practice_areas/consumer_law (last visited 1-25-2018).)

On November 17, 2017, in accordance with the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ("CAFA"), counsel for Mammoth sent the CAFA Notice and a CD containing the documents referenced in the CAFA Notice to the United States Attorney General and all State Attorneys General.  (Declaration of Jordan M. Heinz, ¶2 and Exh. A.)

On November 21, 2017, Mammoth provided the Settlement Administrator a detailed Class Data file including the phone numbers at issue and various combinations of Class Member contact information as well as additional information from Mammoth's customer relationship management (CRM) system which was associated with the phone numbers to which calls were placed and could be used to facilitate the class notice process.  (Mire Decl., ¶3.)  This was in compliance with the Preliminary Approval Order.  (*See* Preliminary Approval Order, ¶7.a (requiring that Mammoth provide the Settlement Administrator Class Data within ten business days of Preliminary Approval Order).)

On December 20, 2017 the Settlement Administrator mailed the Postcard Notice, including a Claim Form with prepaid postage, to 34,288 addresses representing 30,043 unique Class Member phone numbers.  (Mire Decl., ¶5.)  On this same date, the E-Mail Notice was sent to 25,867 email addresses representing 21,241 unique Class Member phone numbers.  (*Id.* ¶6.)  In addition, the Settlement Website located at www.MammothTCPAsettlement.com went live with all applicable deadlines and copies of pertinent settlement papers (*i.e.*, Settlement Agreement, Long Form Notice, etc.).  (*Id.* ¶7.)  On January 24, 2018, a second wave of emails was sent to those recipients that received but did not open the initial E-Mail Notice.  (*Id.* ¶12.)

The Notice Program was a ***resounding success***.  It is estimated that the Notice reached approximately 82.8% of the Class.  Only 2,698 Postcard Notices (7.8%) have been returned undeliverable, and only 2,354 E-Mail Notices (11%) have "bounced" and/or determined to be undeliverable.  (*Id.* ¶¶8-9.)  The reach of the Notice Program will surely rise as the second round of emails that was just sent are opened, and as the Administrator seeks updated address information for those Postcard Notices that were returned.  (Mire Decl. ¶¶8, 11-12.)  To date, 5,436 Class Members representing 15.4% of the Class have submitted claims.  (Mire Decl.

¶13.)  No one has opted out (Mire Decl. ¶14) and no objections have been filed with the Court of which Plaintiff is aware.  (Greenstone Decl. ¶21.)

## V.   FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE

### A.   The Standard for Final Approval

In the Ninth Circuit "there is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008).  The trial Court has discretion to approve or reject a settlement because it is "exposed to the litigants, and their strategies, positions and proof." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).  To assess the fairness of a class-action settlement the Court *may* consider eight factors:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and
> likely duration of further litigation; (3) the risk of maintaining class action
> status throughout the  trial; (4) the amount offered in settlement; (5) the extent
> of discovery completed and the stage of the proceedings; (6) the experience and
> view of counsel; (7) the presence of a governmental participant; and (8) the
> reaction of the class members of the proposed settlement.

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015) (citing *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)).  These factors are not exclusive, and the Court may omit to consider some of them or consider different factors.  *Churchill*, 361 F.3d at 576  n. 7.  In assessing the Settlement however, the Court's discretion should be "limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (quoting *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)).

**B.      This Non-Collusive Settlement is Entitled to a Presumption of Fairness**

"The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Satchell v. Fed. Express Corp.*, No. C 03 2878 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007); *Goodwin v. Winn Mgmt. Grp. LLC*, No. 115CV00606DADEPG, 2017 WL 3173006, at *8 (E.D. Cal. July 26, 2017) (finding the settlement process non-collusive where the settlement resulted from a full day of mediation with a mediator).   A non-collusive settlement, negotiated with the involvement of a respected mediator, is entitled to a "a presumption of fairness." *In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 450 (C.D. Cal. 2014); (*citing Rodriguez*, 563 F.3d at 965) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution.").

The Proposed Settlement Agreement in this action is the result of not one, but two, full day mediations with two experienced mediators – the Hon. Edward A. Infante (Ret.) , and the Hon. Leo S. Papas (Ret.).  (Greenstone Decl. ¶17.)  Both of these retired judges have been widely recognized and respected by Courts throughout the Ninth Circuit as being a leading factor in crafting fair, adequate, and reasonable class settlements on more than one occasion.[6]

---

[6]  *See, e.g., Wren v. RGIS Inventory Specialists*, 2011 WL 1230826, at *14 (N.D. Cal. Apr. 1, 2011), supplemented, 2011 WL 1838562 (N.D. Cal. May 13, 2011) (noting that settlement reached with an experienced mediator, Hon. Edward A. Infante (Ret.) was a result of arms-length negotiations); *Dubeau v. Sterling Sav. Bank*,  2013 WL 4591034, at *2 (D. Or. Aug. 28, 2013) (finding that counsel, with Judge Infante's help as mediator, negotiated an arms-length settlement agreement that is fair, reasonable, and adequate); *Bui v. Sprint Corp.*,  2016 WL 727163, at *2 (E.D. Cal. Feb. 24, 2016) (noting that the parties attended mediation with an experienced and well-respected mediator, the Honorable Edward A. Infante (Ret.)); *Smith v. CRST Van Expedited, Inc.*, No. 310CV01116IEGWMC, 2012 WL 12953429, at *2 (S.D. Cal. Apr. 23, 2012) ("The assistance of an experienced mediator, the Hon. Leo Papas (U.S. Magistrate, Retired) in the settlement process supports the Court's conclusion that the Settlement is non-collusive."); *In re EasySaver Rewards Litig.*, 921 F. Supp. 2d 1040, 1056–57 (S.D. Cal. 2013) (finding "extension arm's length negotiations have taken place, in good faith and free from collusion" in part because the negotiations "were presided over by the experienced mediators Hon. Leo S. Papas (ret.) and Hon. Edward A. Infante (ret.)); *Miller v. Sw. Airlines Co.*, No. C-12-5978-CRB, 2014 WL 11369764, at *2 (N.D. Cal. Mar. 21, 2014) (finding the Settlement "was the product of serious, informed, non-collusive negotiations

Therefore, the Proposed Settlement Agreement should be accorded a presumption of fairness.

**C.    The Settlement is Fair, Adequate, and Reasonable**

**1.    The Strength of Plaintiff's Case Compared to the Risk, Expense, Complexity and Likely Duration of Further Litigation Favors Final Approval**

As the Ninth Circuit has instructed, in assessing the probability and likelihood of success, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations, and rough justice." *Officers for Justice*, 688 F.2d at 625. There is "no particular formula" to be applied, but the court may presume the parties' counsel and the mediator arrived at a reasonable range of settlement by considering plaintiff's likelihood of recovery. *Rodriguez*., 563 F.3d at 965. Moreover, "[i]t has been held proper to take the bird in hand instead of a prospective flock in the bush." *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1041 (S.D. Cal. 2015) (*citing Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004)).

An objective evaluation of the Proposed Settlement Agreement, compared to the risk, expense, complexity, and likely duration of further litigation confirms that the Settlement Agreement should be viewed as fair, reasonable, and adequate. *See Wannemacher v. Carrington Mortg. Servs., LLC*, No. SACV122016FMOANX, 2014 WL 12586117, at *5 (C.D. Cal. Dec. 22, 2014) (discussing that a court should "objectively" evaluate the "strengths and weaknesses inherent in the litigation").

If forced to proceed, Plaintiff would be required, at a minimum, to bear the cost of performing discovery necessary to certify and prove-up Plaintiff's claims. (Greenstone Decl. ¶18.) This would include discovery regarding the nature of the technology used to make the calls at issue, as well as discovery concerning the various class members and how their information was acquired. (*Id*.) Plaintiff would also need to brief class certification and possibly retain a technical expert to analyze Mammoth's records. (*Id*.) All the while, Plaintiff

conducted at arm's length by the Parties in the presence of the Honorable Leo S. Papas, United States Magistrate Judge (Ret.).").

would face substantial litigation risk.  Although Plaintiff does not believe that Mammoth's retroactive waiver bars Plaintiff's claim or the claims of Class Members, this is an argument Mammoth indicated it would surely raise.  (*Id.*)  Moreover, there is little law on this highly case-specific issue.  If Plaintiff lost summary judgment on this issue, the case would be lost.  In addition, the basis of Plaintiff's case—the FCC's written consent rule—is itself subject to possible future challenge in the ever shifting sands of TCPA jurisprudence.  *See, e.g., Bais Yaakov of Spring Valley v. FCC*, 852 F.3d 1078 (D.C. Cir. 2017) (holding that FCC exceeded its authority when it promulgated rule requiring businesses to include opt-out notices on solicited fax advertisements).

These risks must be balanced against a simple reality: if the Proposed Settlement Agreement is finally approved, Class Members will receive at minimum $75.20 and at maximum $500 in relief immediately.  Thus, this factor weighs in favor of final approval. *Morales v. Stevco, Inc.*, No. 1:09-CV-00704 AWI, 2011 WL 5511767, at *10 (E.D. Cal. Nov. 10, 2011) (immediate recovery for the class is preferable to "lengthy and expensive litigation with uncertain results").

### 2. The Risks of Maintaining Class Action Status Through Trial Favors Final Approval

The risk that the Class might not be certified also favors final approval.  Even if the Court were to determine that Plaintiff's claim is not barred by Mammoth's retroactive waiver, it could still potentially be used by Mammoth to challenge class certification.  For example, Mammoth might argue that the Class is not certifiable because, in light of the retroactive waiver, it is necessary to analyze how Mammoth obtained each individual Class Member's number (to determine if the waiver applies).  Mammoth might also argue that Plaintiff is not typical of the other Class Members.  Moreover, there is always the risk that other issues might come to light through discovery that would hinder Plaintiff's ability to bring a successful motion for class certification.  These risks weigh strongly in favor of final approval.  *See Wannemacher*, 2014 WL 12586117, at *6 (finding that where motion for class certification had

not been filed the risk that the class would not be certified weighed in favor of approving the settlement); *Couser*, 125 F. Supp. 3d at 1042 (same); *Grannan v. Alliant Law Grp., P.C.*, No. C10-02803 HRL, 2012 WL 216522, at *6 (N.D. Cal. Jan. 24, 2012) (finding that since discovery could result in factors that would risk certification of the class this factor weighs in favor of settlement).

### 3.     The Amount Offered in Settlement Favors Final Approval

The Ninth Circuit has observed that "the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Officers for Justice*, 688 F.2d at 624 (internal citations omitted). "Thus, when analyzing the amount offered in settlement, the Court should examine 'the complete package taken as a whole,' and the amount is 'not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators.'" *Morales*, 2011 WL 5511767, at *10.

The Settlement establishes a $3.75 million dollar nonreversionary Settlement Fund. (Settlement Agreement, ¶63.) *Even after* deducting an estimated $937,500 in attorneys' fees and $24,436.60 in expenses, $142,000 in administration costs and a $5,000 class representative Service Award, and assuming a 100% participation rate, this would allow an average recovery of $74.74 per Class Member. (Greenstone Decl. at ¶44-6.) This is many times what average recovery per class member would have been (assuming a 100% participation rate) in other recently settled TCPA class actions, which is only $2.66 (ranging from a low of $0.56 to a high of $7.06). (*See* Greenstone Decl. at ¶45-6 (setting forth statistics for a sample of twelve recent TCPA settlements).) Moreover, based on the current 15.4% participation rate, Class Counsel estimate that the final participation rate here will likely be in the range of 18 to 20% given that the claims deadline is not until March 20, 2018. (*Id.*) Assuming a 20% participation rate, the Settlement Fund will be fully exhausted and each claimant will receive a *pro rata* distribution of $373.71. (*Id.*) This is again significantly greater than the actual average recovery per class member in other recently settled TCPA class actions, which is only $110.40 (ranging from a low of $14.28 to a high of

$305.90).  (*Id.*)  The estimated 20% participation rate here is also significantly higher than the recent settlement average participation rate of 3.88% (ranging from a low of 1.1% to a high of 8.5%).  Thus, the amount offered using every metric typically used to measure class action settlements, strongly favors final approval.

### 4.    The Stage of the Proceedings Favors Final Approval

The court may evaluate the stage of the proceedings to determine if "the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case."  *Nat'l Rural Tele. Coop.*, 221 F.R.D. at 527.  "In the context of class action settlements, as long as the parties have sufficient information to make an informed decision about settlement, 'formal discovery is not a necessary ticket to the bargaining table.'" *Couser*, 125 F. Supp. 3d at 1042.

As discussed above, although this case was stayed shortly after it was filed, it has been actively litigated.  In opposing the Motion to Stay, Plaintiff successfully compelled the deposition of Tammy Innocenti, Mammoth's Vice President of Database Marketing & Research, on the key issue of consent.  (Greenstone Decl. ¶14.)  Through this deposition, Plaintiff was able to explore the factual basis of Mammoth's primary defense with detailed questioning concerning the functionality of, and disclosures contained on, the Mammoth website, including the Privacy Policy that Mammoth argued permitted the collection and used of telephone numbers for marketing purposes.  (*Id.*)  After Mammoth's Motion to Stay was granted, Plaintiff opposed Mammoth's petition in briefing before the FCC.  (*Id.* ¶16.)  When that petition was partially granted the parties then engaged in protracted settlement discussions and two all-day mediations before Judge Papas and Judge Infante.  (*Id.* ¶¶16-7.)  Leading up to the mediations, Mammoth provided detailed information regarding the number of putative Class Members, the number of calls made, and the nature, quality and format of the information Mammoth possessed.  (*Id.*)  This information was more than sufficient to give Plaintiff a "good grasp on the merits" of this case.  *Rodriguez* 563 F.3d at 967.  In short, through their diligent efforts, Plaintiff's counsel ensured they had all the information necessary

to negotiate a good settlement which is reflected in the high claims rate and positive reaction of the Class.  As such, this factor weighs in favor of final approval of the Settlement.

### 5.    The Experience and Views of Counsel Favors Final Approval

Settlement recommendations of competent counsel are accorded "great weight" by the Courts since "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation."  *Nat'l Rural Telecommunications Coop.*, 221 F.R.D. at 528 (citations omitted).

Here, Class Counsel zealously litigated for over three years, and attended two mediation sessions with experienced mediators before they were satisfied with the Proposed Settlement Agreement.  Moreover, Class Counsel are seasoned class action attorneys with significant experience in consumer class actions, including TCPA cases.  (Greenstone Decl. ¶¶3-11; Declaration of Abigail Zelenski, ¶¶3-9.)  Likewise, Defendants' counsel, Kirkland & Ellis LLP, is a renowned defense firm with significant experience in defending all types of consumer class actions.  (Greenstone Decl. ¶16.)  Thus, Counsels' recommendation to approve the Settlement should "be given great weight."

### 6.    The Reaction of the Class Members of the Proposed Settlement Favors Final Approval

Class Notice was sent via mail and email approximately one month ago on December 20, 2017, and is estimated to have reached 82.8% of Class Members.  (Mire Decl. ¶¶5-6; 11.)  Additional efforts are under way to reach the intended recipients of bounced, undeliverable and/or unopened notices.  (*Id.* ¶¶8, 12.)  To date, there have been ***no objections*** and ***no opt-outs***.  (*Id.* ¶14.)  5,436 Class Members—representing approximately 15.4% of the Class—have submitted claims, with two months remaining until March 20, 2018 Claims Deadline.  (*Id.* ¶13.)  These numbers weigh strongly in favor of final approval.  *See Nat'l Rural Tele. Coop.*, 221 F.R.D. at 529 ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members.");  *Davis v. Brown Shoe Co., Inc.*,

No. 113CV01211LJOBAM, 2015 WL 6697929, at *6 (E.D. Cal. Nov. 3, 2015) (granting final approval where there were no objectors and only two opt-outs and finding that the settlement was presumptively fair, adequate and reasonable); *Aboudi v. T-Mobile USA, Inc.*, No. 12CV2169 BTM NLS, 2015 WL 4923602, at *6 (S.D. Cal. Aug. 18, 2015) (granting approval where there were no objectors and only two requests for exclusion); *Zakskorn v. Am. Honda Motor Co.*, No. 2:11-CV-02610-KJM, 2015 WL 3622990, at *9 (E.D. Cal. June 9, 2015) (granting final approval in part because the "very small number of objections" and low percentage of opt-outs "weigh[ed] in favor of approval").

### D.   The Settlement Class Satisfies the Requirements of Rule 23

In his Motion for Preliminary Approval, Plaintiff explained in detail why the class should be certified, going over the four prerequisites of Rule 23(a)—numerosity, commonality, typicality, and adequacy—as well as the predominance and superiority prongs of Rule 23(b). (Preliminary Approval Motion, 11:19-13:28.)  Plaintiff incorporates this analysis herein by this reference.  In the Preliminary Approval Order, this Court provisionally certified the Class for settlement purposes.   (Preliminary Approval Order, ¶2.)   In so doing, the Court made a preliminary determination that the Class satisfies the requirements of Rule 23.  *See* MANUAL FOR COMPLEX LITIG., § 21.632 (4th ed. 2004).  Plaintiff now submits that the Class may finally be certified for settlement purposes, as it continues to meet all the requirements of Rule 23(a) and at least one of the requirements of Rule 23(b).[7]

## VI.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant final approval of the Proposed Settlement Agreement.

---

[7] Moreover, because Plaintiff alleges a claim under a federal statute that applies equally to all Class Members nationwide, Ninth Circuit's recent decision in *In re Hyundai & Kia Fuel Econ. Litig.*, No. 15-56014 (9th Cir. Jan. 23, 2018), calling for the District Court to consider the impact of varying state laws in the settlement of a case brought under CAFA, is not applicable.

1   Dated:  January 26, 2018          JAURIGUE LAW GROUP
2                                     GLANCY PRONGAY & MURRAY LLP

3                                     _____/s/ *Mark S. Greenstone*_____
4                                     Michael J. Jaurigue, Abigail A. Zelenski, David
                                      Zelenski, Lionel Z. Glancy, Mark S. Greenstone
5                                     *Attorneys for Plaintiff*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>PROOF OF SERVICE BY ELECTRONIC POSTING</u>**

I, the undersigned say:

I am not a party to the above case, and am over eighteen years old.  On January 26, 2018, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Eastern District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on January 26, 2018, at Los Angeles, California.


*s/ Mark S. Greenstone*
Mark S. Greenstone

# Mailing Information for a Case 2:14-cv-02422-JAM-DB Story v. Mammoth Mountain Ski Area, LLC

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Lionel Z. Glancy**
  lglancy@glancylaw.com,info@glancylaw.com

- **Mark Samuel Greenstone**
  mgreenstone@glancylaw.com

- **Jordan M. Heinz , PHV**
  jordan.heinz@kirkland.com,emily.malloy@kirkland.com

- **Michael Joe Jaurigue**
  michael@jlglawyers.com,nefertari@jlglawyers.com

- **Jeffrey L. Willian , PHV**
  jwillian@kirkland.com

- **Abigail Ameri Zelenski**
  abigail@jlglawyers.com

- **David S Zelenski**
  david@jlglawyers.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)