1  JAURIGUE LAW GROUP
   Michael J. Jaurigue (SBN 208123)
2  michael@jlglawyers.com
   Abigail A. Zelenski (SBN 228610)
3  abigail@jlglawyers.com
   David Zelenski (SBN 231768)
4  david@jlglawyers.com
   300 West Glenoaks Boulevard, Suite 300
5  Glendale, California 91202
   Telephone:  (818) 630-7280
6  Facsimile:  (888) 879-1697

7  GLANCY PRONGAY & MURRAY LLP
   Lionel Z. Glancy (SBN 134180)
8  Marc L. Godino (SBN 182689)
   Mark S. Greenstone (SBN 199606)
9  1925 Century Park East, Suite 2100
   Los Angeles, California 90067
10 Telephone:  (310) 201-9150
   Facsimile:  (310) 201-9160
11 E-Mail:  info@glancylaw.com

12

13 *Attorneys for Plaintiff Paul Story*

14               **UNITED STATES DISTRICT COURT**

15               **EASTERN DISTRICT OF CALIFORNIA**

16

17 PAUL STORY, individually and on behalf of all        Case No. 2:14-CV-02422-JAM-DB
   others similarly situated,
18                                                       **PLAINTIFF'S NOTICE OF MOTION AND**
              Plaintiff,                                 **MOTION FOR ATTORNEYS' FEES AND**
19                                                       **EXPENSES AND SERVICE AWARD TO**
       v.                                                **CLASS REPRESENTATIVE;**
20                                                       **MEMORANDUM OF POINTS AND**
   MAMMOTH MOUNTAIN SKI AREA, LLC, a                     **AUTHORITIES IN SUPPORT THEREOF**
21 Delaware limited-liability company,
                                                         *Assigned to Hon. John A. Mendez*
22            Defendant.
                                                         Date: March 13, 2018
23                                                       Time: 1:30 p.m.
                                                         Location: Robert T. Matsui United States
24                                                       Courthouse, Courtroom 6, 501 I Street,
                                                         Sacramento, California 95814
25

26

27

28

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on March 13, 2018, at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 6 of the United States District Court for the Eastern District of California, located at 501 I Street, Sacramento, California 95814, before the Honorable John A. Mendez, Plaintiff Paul Story ("Plaintiff") will move for an order awarding Class Counsel attorneys' fees of $937,500, reimbursement of costs in the amount of $24,436.60, and a Service Award to Plaintiff in the amount of $5,000.

Plaintiff brings this Motion pursuant to Federal Rule of Civil Procedure 23(h) on the grounds that the parties' Stipulation of Settlement authorizes the requested fees, reimbursement of expenses, and Service Award.   This Motion is based upon this Notice Of Motion and Motion, the accompanying Memorandum of Points and Authorities appended hereto; the Declarations of Plaintiff's counsel Mark S. Greenstone, the Declaration of Plaintiff's counsel Abigail A. Zelenski, the Declaration of Plaintiff Paul Story, the Declaration of the Settlement Administrator Dustin Mire, the [Proposed] Order[1], all pleadings and other documents on file in this action, and such other matters as may be presented at or in connection with the hearing on this Motion.

DATED:  January 26, 2018

JARIGUE LAW GROUP
GLANCY PRONGAY & MURRAY LLP

By:  *s/ Mark S. Greenstone*

Mark S. Greenstone
Michael J. Jarigue
Abigail A. Zelenski
David Zelenski
Lionel Z. Glancy
Marc L. Godino
*Attorneys for Plaintiff*

---

[1] A [Proposed] Order will be lodged with the Court prior to the Final Approval Hearing.

# <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................. 1

II.     PROCEDURAL AND FACTUAL BACKGROUND.................................................. 1

III.    ARGUMENT ...................................................................................................... 2

      A.      The Requested Fee is Fair, Reasonable, And Justified under the Percentage-of-the-Fund Method ............................................................................................................. 2

            1.      Class Counsel Achieved Exceptional Results for the Class ................................. 3

            2.      Class Counsel Exhibited Outstanding Skill and Diligence................................... 4

            3.      The Risks of Litigation and the Novelty and Complexity of the Issues Justify   the Requested Fees and Costs ...................................................................................... 7

            4.      Awards in Similar Cases Demonstrate the Requested Fees are Reasonable ......... 8

      B.      A Lodestar Cross-Check Confirms the Reasonableness of the Requested Fees .............. 8

            1.      The Hours Class Counsel have Expended are Reasonable ................................... 9

            2.      Class Counsel's Rates Are Reasonable............................................................. 10

IV.     CLASS COUNSEL'S REQUESTS FOR EXPENSES ARE REASONABLE.......................... 14

V.      THE REQUESTED SERVICE AWARD FOR THE CLASS REPRESENTATIVE IS REASONABLE AND SHOULD BE APPROVED ................................................................. 14

VI.     CONCLUSION.................................................................................................. 15

# TABLE OF AUTHORITIES

<u>CASES</u>

*Ackerman v. Western Electric Co.,*
    860 F.2d 1514 (9th Cir. 1988) ........................................................................................ 11

*Arredondo v. Delano Farms Co.,*
    No. 1:09-CV-01247-MJS, 2017 WL 4340204 (E.D. Cal. Sept. 29, 2017)............................ 14

*Bais Yaakov of Spring Valley v. FCC,*
    852 F.3d 1078 (D.C. Cir. 2017)........................................................................................ 7

*Barbosa v. Cargill Meat Sols. Corp.,*
    297 F.R.D. 431 (E.D. Cal. 2013) ................................................................................. 6, 11

*Bayat v. Bank of the W.,*
    No. C-13-2376 EMC, 2015 WL 1744342 (N.D. Cal. Apr. 15, 2015) .............................. 4, 8

*Blum v. Stenson,*
    465 U.S. 886 (1984)........................................................................................................ 12

*Bond v. Ferguson Enterprises, Inc.,*
    No. 1:09-CV-1662 OWW MJS, 2011 WL 2648879 (E.D. Cal. June 30, 2011) .................. 11

*Browne v. American Honda Motor Co.,*
    2010 U.S. Dist LEXIS 144823 (C.D. Cal. Oct. 5, 2010)................................................... 10

*Bywaters v. United States,*
    670 F.3d 1221 (Fed. Cir. 2012)....................................................................................... 13

*Collins v. Cargill Meat Sols. Corp.,*
    No. 1:10-CV-00500 OWW, 2011 WL 2580321 (E.D. Cal. June 28, 2011)......................... 11

*Couser v. Comenity Bank,*
    125 F. Supp. 3d 1034 (S.D. Cal. 2015)............................................................................. 4

*Dakota Med., Inc. v. RehabCare Grp., Inc.,*
    No. 1:14-CV-02081-DAD-BAM, 2017 WL 4180497 (E.D. Cal. Sept. 21, 2017) .................. 2

*Fischer v. SJB-P.D. Inc.,*
    214 F.3d 1115 (9th Cir. 2000) .......................................................................................... 9

*Garcia v. Gordon Trucking, Inc.,*
    No. 1:10-CV-0324 AWI SKO, 2012 WL 5364575 (E.D. Cal. Oct. 31, 2012)............... 11, 12

*Grannan v. Alliant Law Grp., P.C.*,
No. C10-02803 HRL, 2012 WL 216522 (N.D. Cal. Jan. 24, 2012) ..................................4, 8, 9

*Hash v. United States*,
2012 WL 1252624 (D. Idaho Apr. 13, 2012) ...................................................................... 13

*Hensley v. Eckerhart*,
461 U.S. 424 (1983)..........................................................................................................9, 10

*In re Bluetooth Headset Prod. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ..............................................................................................8, 9

*In re Cathode Ray Tube (CRT) Antitrust Litigation*,
2016 WL 4126533 (N.D. Cal. 2016) ...................................................................................... 11

*In re Chiron Corp. Sec. Litig.*,
No. C-04-4293 VRW, 2007 WL 4249902 (N.D. Cal. Nov. 30, 2007)................................12, 13

*In re High-Tech Employee Antitrust Litigation*,
2015 WL 5158730 (N.D. Cal. 2015) ...................................................................................... 11

*In re HPL Technologies, Inc. Securities Litigation*,
366 F. Supp. 2d 912 (N.D. Cal. 2005) ..................................................................................... 12

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) .................................................................................................. 15

*In re Omnivision Techs.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................................................................7, 8

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015) ................................................................................................... 2

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*,
Report and Order, 27 F.C.C.R. 1830 (F.C.C. Feb. 15, 2012) ................................................... 5

*In the Matter of Rules and Regulations Implementing the TCPA of 1991*,
31 FCC Rcd. 11643 (Oct. 14, 2016) ......................................................................................... 6

*James v. J.P. Morgan Chase Bank, N.A.*,
No. 8:15-cv-2424, 2017 WL 2472499 (M.D. Fla. Jun. 5, 2017) ............................................ 14

*Kearney v. Hyundai Motor America*,
2013 WL 3287996 (C.D. Cal. June 28, 2013) ......................................................................... 11

*Knight v. Red Door Salons, Inc.*,
No. 08-01520, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ....................................................... 6

*Knox v. Chiang,*
   No. 2:05-CV-02198-MCE, 2013 WL 2434606 (E.D. Cal. June 5, 2013) .................................. 9

*Laffey v. Northwest Airlines, Inc.,*
   572 F. Supp. 354 (D.D.C. 1983) .................................................................................................. 12

*Lo v. Oxnard European Motors, LLC,*
   No. 11CV1009 JLS MDD, 2012 WL 1932283 (S.D. Cal. May 29, 2012) ................................. 8

*Lofton v. Verizon Wireless (VAW) LLC,*
   No. 13-05665, 2016 WL 7985253 (N.D. Cal. May 27, 2016) .................................................... 7

*McIntosh v. McAfee, Inc.,*
   No. C06-07694 JW, 2009 WL 673976 (N.D. Cal. Mar. 13, 2009) .......................................... 11

*Morales v. Conopco, Inc.,*
   No. 2:13-2213 WBS EFB, 2016 WL 6094504 (E.D. Cal. Oct. 18, 2016) ......................... 2, 7, 8

*Moreno v. City of Sacramento,*
   534 F.3d 1106 (9th Cir. 2008) .................................................................................................. 10

*Ogbuehi v. Comcast of California/Colorado/Florida/Oregon, Inc.,*
   No. 2:13-CV-00672-KJM, 2015 WL 3622999 (E.D. Cal. June 9, 2015) .................................. 14

*Ontiveros v. Zamora,*
   303 F.R.D. 356 (E.D. Cal. 2014) .............................................................................................. 15

*Ott v. Mortg. Inv'rs Corp. of Ohio, Inc.,*
   No. 3:14-CV-00645-ST, 2016 WL 54678 (D. Or. Jan. 5, 2016) ......................................... 4, 14

*Parkinson v. Hyundai Motor Am.,*
   796 F.Supp.2d 1160 (C.D. Cal. 2010) ...................................................................................... 11

*Recouvreur v. Carreon,*
   940 F. Supp. 2d 1063 (N.D. Cal. 2013) .................................................................................... 13

*Rodriguez v. Kraft Foods Grp., Inc.,*
   No. 1:14-CV-1137-LJO-EPG, 2016 WL 5844378 (E.D. Cal. Oct. 5, 2016) ............................. 3

*Rodriguez v. West Publ'g Corp.,*
   563 F.3d 948 (9th Cir. 2009) ........................................................................................... 3, 4, 14

*Staton v. Boeing Co.,*
   327 F.3d (9th Cir. 2003) ........................................................................................................... 14

*Steiner v. Am. Broad. Co.,*
   248 F. App'x 780 (9th Cir. 2007) ................................................................................................ 9

iv

*Story v. Mammoth*,
   2015 WL 2339437 (E.D. Cal. May 13, 2015) ................................................................. 5, 6

*Trujillo v. Singh*,
   No. 1:16-CV-01640LJO-EPG, 2017 WL 1831941 (E.D. Cal. May 8, 2017) ........................................ 12

*Valentin v. Grant Mercantile Agency, Inc.*,
   No. 1:17-CV-01019-AWI-SKO, 2017 WL 6604410 (E.D. Cal. Dec. 27, 2017) .................................... 12

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ........................................................................... 2, 7, 8, 9

*Wannemacher v. Carrington Mortg. Servs., LLC*,
   No. SACV-12-2016-FMO-ANX, 2014 WL 12586117 (C.D. Cal. Dec. 22, 2014) .......................... 2, 3, 8

*Wilkins v. HSBC Bank Nevada, N.A.*,
   No. 1:14-cv-00190, 2015 WL 890566 (N.D. Ill. Feb. 27, 2015) ............................................ 14

*Yamada v. Nobel Biocare Holding AG*,
   825 F.3d 536 (9th Cir. 2016) ................................................................................. 3

## STATUTES

47 U.S.C. §227(b)(3) ........................................................................................... 3

47 U.S.C. § 227(b)(1)(C) ....................................................................................... 4

## RULES

Federal Rule of Civil Procedure 23(h) .......................................................................... 1, 14

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

The skill and diligence of Class Counsel have produced an exceptional result in this case brought under the Telephone Consumer Protection Act ("TCPA"): a $3.75 million dollar nonreversionary Settlement Fund for a class of 35,335.  Approximately 5,436 Class Members—representing 15.4% of the Class—have submitted claims.  *None* have objected, and *none* have opted out.  This result was achieved notwithstanding the fact that the case has been stayed since shortly after it was filed, the subject of a lengthy petition process with the Federal Communications Commission ("FCC"), and through two mediations.  Based on the value of the results achieved, the skill and diligence exhibited by Class Counsel, and the time expended, this Court should approve Plaintiff's Motion for Award of Attorneys' Fees and Expenses and Service Award to Class Representative by granting this application for an award of: (1) $937,500 in attorneys' fees; (2) $24,436.60 for reimbursement of litigation costs and expenses; and (3) $5,000 as a class representative Service Award to Plaintiff Paul Story.

The requested fees are equal to 25% of the Settlement Fund, the benchmark in the Ninth Circuit.  This amount represents a modest 1.09 multiplier applied to Class Counsel's $861,313.09 lodestar to date, computed using the Laffey Matrix adjusted for Sacramento hourly rates.  The requested fees are thus justified by the two primary methods for awarding fees, the percentage-of-the-fund and the lodestar crosscheck.  They will fairly compensate Class Counsel for work already performed in the action and for the work remaining to be performed, including responding to Class Member inquiries, finalizing the final-approval motion, preparing for and attending the final approval hearing, and ensuring the settlement is fairly administered.  Class Counsel's costs, approximately half of which were spent on mediator fees, are also well within the range of reasonableness.  Finally, the class representative himself is deserving of a $5,000 Service Award for his role in working with Class Counsel over a period of years to ensure a meritorious settlement.

## II.   PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff's Motion for Preliminary Approval of Class-Action Settlement ("Preliminary Approval Motion"), and concurrently filed Motion for Final Approval of Class-Action Settlement, incorporated by this reference, detail the basis of Plaintiff's claims, the procedural history, and the Parties' settlement

efforts.  (*See* Preliminary Approval Motion (ECF 72) at 9-12; Final Approval Motion Mem. of P's & A's, Section II.)   Plaintiff refers the Court to these materials for the relevant procedural and factual background.

## III.    ARGUMENT

### A.    The Requested Fee is Fair, Reasonable, And Justified under the Percentage-of-the-Fund Method

"'Under Ninth Circuit law, the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method' for awarding attorneys' fees." *Dakota Med., Inc. v. RehabCare Grp., Inc*., No. 1:14-CV-02081-DAD-BAM, 2017 WL 4180497, at *7 (E.D. Cal. Sept. 21, 2017) *citing Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).  To ensure a particular method or amount is reasonable, the Ninth Circuit encourages courts to cross-check their chosen method of calculating fees against the other method.  *In re Online DVD-Rental Antitrust Litig*., 779 F.3d 934, 949 (9th Cir. 2015).  Although courts may use either method, "use of the percentage method in common fund cases appears to be dominant." *Morales v. Conopco, Inc*., No. 2:13-2213 WBS EFB, 2016 WL 6094504, at *7 (E.D. Cal. Oct. 18, 2016).

The Ninth Circuit recognizes 25% of the common fund as a "benchmark," that may be adjusted upward or downward based on the circumstances of the case.  *Vizcaino*, 290 F.3d at 1047; *In re Online DVD-Rental Antitrust Litig*., 779 F.3d 934, 949 (9th Cir. 2015) ("in this circuit, the benchmark percentage is 25%").   "[I]n most common fund cases, the award exceeds that benchmark." *Wannemacher v. Carrington Mortg. Servs., LLC*, No. SACV-12-2016-FMO-ANX, 2014 WL 12586117, at *8 (C.D. Cal. Dec. 22, 2014).

Regardless of the method chosen, courts award attorneys' fees based on an evaluation of "all the circumstances of the case." *Vizcaino*, 290 F.3d at 1048.  According to the Ninth Circuit, these circumstances include: (1) the results achieved for the class; (2) the quality of representation; (3) the novelty and complexity of the issues; (4) the risks of the litigation; and (5) awards in similar cases. *See id.* at 1048–51; *see also Dakota Med., Inc.*, 2017 WL 4180497, at *3 (same).  All of these factors militate in favor of approving the requested attorneys' fees here.

### 1.   Class Counsel Achieved Exceptional Results for the Class

The "party's success in the litigation [is] the most critical factor" of the *Vizcaino* factors. *Rodriguez v. Kraft Foods Grp., Inc.*, No. 1:14-CV-1137-LJO-EPG, 2016 WL 5844378, at *13 (E.D. Cal. Oct. 5, 2016) *citing Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536, 546 (9th Cir. 2016) ("Of those factors, a party's success in the litigation is the 'most critical'"); *see also Wannemacher*, 2014 WL 12586117, at *9 ("The result achieved is a significant factor to be considered in making a fee award."). The proposed Settlement represents an outstanding result for the Class Members for two key reasons.

First, both the deal struck by Class Counsel, and its real-world implementation, are truly exceptional. The Settlement establishes a $3.75 million dollar nonreversionary Settlement Fund for a Class of 35,335.  (Settlement Agreement, ¶63.)[2]  *Even after* deducting an estimated $937,500 in attorneys' fees and $24,436.60 in expenses, $142,000[3] in administration costs, and a $5,000 class representative Service Award, and assuming a 100% participation rate, this would allow an average recovery of $74.74 per Class Member.  (Declaration of Mark S. Greenstone ("Greenstone Decl.") at ¶46.) This is many times what average recovery per class member would have been, assuming a 100% participation rate, in other recently settled TCPA class actions, which is only $2.66 (ranging from a low of $0.56 to a high of $7.06).  (*See* Greenstone Decl. ¶¶45-6 (setting forth statistics for a sample of twelve recent TCPA settlements).)  Moreover, based on the current 15.4% participation rate, Class Counsel estimate that the final participation rate here will likely be in the range of 18 to 20% given that the claims deadline is not until March 20, 2018.  (*Id.* at ¶44)  Assuming a 20% participation rate, the Settlement Fund will be fully exhausted and each claimant will receive a *pro rata* distribution of $373.71, an amount not far off from the $500 statutory maximum.[4]  (*Id.*)  This is, again ,significantly greater than the actual average recovery per class member in other recently settled TCPA class actions, which is only $110.40

---

[2] The "Settlement Agreement" refers to the Stipulation of Settlement (ECF 73-1).  All capitalized terms herein shall have the definitions given to them in the Settlement Agreement unless otherwise stated.

[3] As noted in Plaintiff's Final Approval Motion, this assumes a 25% claims rate and is used in an abundance of caution.  Based on the claims to date, Class Counsel estimate a claims rate of 18% to 20%, which would have an estimated administration cost of $125,000.  (Greenstone Decl. ¶44.)

[4] Although the TCPA permits treble damages, for "willingly or knowingly" violating its requirements, 47 U.S.C. §227(b)(3), the Court is not required to consider treble damages in assessing the adequacy of the settlement.  *See Rodriguez v. West Publ'g Corp*., 563 F.3d 948, 965 (9th Cir. 2009) ("We have never precluded courts from comparing the settlement amount to both single and treble damages.  By the same token, we do not require them to do so in all cases.").

1    (ranging from a low of $14.28 to a high of $305.90).  (*Id*. at ¶46)  *See also*, *Grannan v. Alliant Law Grp.,*

2    *P.C*., No. C10-02803 HRL, 2012 WL 216522, at *10 (N.D. Cal. Jan. 24, 2012) (finding that although the

3    recovery is less than the TCPA maximum "it nonetheless represents a windfall to the class members that

4    sufficiently compensates them for their troubles"); *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1047

5    (S.D. Cal. 2015) (finding results favorable even though there was no injunctive relief, and the monetary

6    recovery was low for TCPA cases).  The estimated 20% participation rate here is also significantly higher

7    than the recent average TCPA settlement participation rate of 3.88% (ranging from a low of 1.1% to a

8    high of 8.5%), as well as that of other consumer class actions.[5]  (Greenstone Decl. ¶¶45-6.)  Thus, the

9    results of the settlement measured by every metric typically used to measure consumer class actions, are

10   exceptional.

11   Second, Plaintiff believes the Settlement provides for a very limited release.  Plaintiff contends

12   that the Settlement Class will only release those claims that are based on the allegations or facts set forth

13   or asserted "in the First Amended Complaint relating to prerecorded-or-artificial-voice telephone calls

14   made by, or on behalf of, [Mammoth] for a marketing or advertising purpose during the Class Period."

15   (Settlement Agreement, §§ 44, 89.)  As a result, it is Plaintiff's contention that Settlement Class Members

16   retain their right to pursue Defendant Mammoth Mountain Ski Area, LLC ("Defendant" or "Mammoth")

17   for other types of calls that were or may be made, if any—*e.g*., for text messages and faxes (see 47

18   U.S.C. § 227(b)(1)(C), from other calls placed to individuals on the national do-not-call list, *see id.* §§

19   227(c)(3), (c)(5), and from calls placed outside of the Class Period.  Thus, although the Settlement does

20   not provide injunctive-relief, Plaintiff believes its limited release protects Class Members' right to seek

21   redress should they experience unauthorized contact that falls outside the scope of this case.

22              **2.    Class Counsel Exhibited Outstanding Skill and Diligence**

23   Class Counsel in this Action are seasoned class-action attorneys with significant experience in

24

25       [5] *See e.g.*, *Bayat v. Bank of the W*., No. C-13-2376 EMC, 2015 WL 1744342, at *1 (N.D. Cal. Apr.
     15, 2015) (finally approving a settlement with roughly a 1.9% claims rate); *Ott v. Mortg. Inv'rs Corp. of*
26   *Ohio, Inc*., No. 3:14-CV-00645-ST, 2016 WL 54678, at *1 (D. Or. Jan. 5, 2016) (finally approving a
     settlement where out of 3,080,000 class members who received direct notice only 30,389 had submitted
27   claims representing roughly 0.98% claims rate );  *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1044
     (S.D. Cal. 2015) (308,026 valid claims were filed representing 7.7% of the estimated 3,982,645 class
28   members).

consumer class actions, including TCPA cases.  (Greenstone Decl. ¶¶3-1; Declaration of Abigail A. Zelenski ("Zelenski Decl."), ¶¶3-9.)  Class Counsel drew upon this experience to zealously and skillfully litigate this action for over three years, resulting in the excellent Proposed Settlement before this Court today.

As noted in Plaintiff's Motion for Final Approval, this case has not taken an ordinary course.  In Plaintiff's First Amended Complaint (ECF 71) Plaintiff alleges that Mammoth placed calls to Plaintiff and thousands of similarly situated Class Members without first obtaining express written consent with required disclosures as mandated under the TCPA pursuant to a 2012 FCC rule change that went into effect on October 16, 2013.  (*See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 27 F.C.C.R. 1830 (F.C.C. Feb. 15, 2012).)  Shortly after Plaintiff filed, Mammoth moved for a stay pending a ruling by the FCC on various petitions concerning the consent requirement under the new rule. (*See generally* Mammoth's Motion to Stay (ECF 17). Mammoth also filed its own petition with the FCC on this issue.

Class Counsel vigorously opposed the Motion to Stay, successfully moving *ex parte* to compel the deposition of Mammoth's Vice President of Database Marketing & Research, Tammy Innocenti, on the critical issue of consent.  (Greenstone Decl. ¶14.)  Through this deposition, Plaintiff explored the factual basis of Mammoth's contention that Plaintiff's provision of his telephone number constituted a form of consent that allegedly exonerates Mammoth from liability.  (*Id*.)  This involved detailed questioning regarding the functionality of, and disclosures contained on, the Mammoth website, including the Privacy Policy that Mammoth argued was intended to govern how it collects and uses personally-identifiable information including telephone numbers.  (*Id*.)

Based on Mammoth's petition, the Court granted the Motion to Stay, explaining that "[t]he FCC's ruling on this petition will very likely address, to some extent, the merit of Plaintiff's claim." *Story v. Mammoth*, 2015 WL 2339437, at *4 (E.D. Cal. May 13, 2015).  Class Counsel did not let this deter them, however, and continued fighting.  On December 10, 2015, Mammoth filed an *ex parte* request with the FCC supplementing its petition and requesting alternative relief.  (Greenstone Decl. ¶16.)[6]  On January

---

[6] Defense counsel (Kirkland & Ellis LLP) filed Mammoth's initial petition.  The December 10, 2015 *ex parte* request was filed by Mayer Brown LLP.  Mammoth has thus been represented by *two* highly skilled national defense firms.  (Greenstone Decl. ¶16.)

20, 2016, Plaintiff filed his response to Mammoth's *ex parte* submission. (*Id.*)  In October 2016, the FCC issued an order granting Mammoth's petition in part. (*Order, In the Matter of Rules and Regulations Implementing the TCPA of 1991*, 31 FCC Rcd. 11643, 11651 (Oct. 14, 2016).)  Specifically, the FCC granted Mammoth a "limited retroactive waiver[]" for calls made "from October 16, 2013[,] through October 7, 2015," to anyone who had provided some form of written consent to Mammoth prior to the rule change. (*Id.* at 11648–50.)

Once again, Plaintiff's counsel were not deterred.  Even though Mammoth was now armed with a retroactive waiver that it might use on summary judgment or at certification, Class Counsel managed to initiate a meaningful settlement dialogue and an exchange of critical information regarding when the telemarketing campaign had taken place, the number of calls placed, and the nature, quality and format of the Class Member contact information Mammoth possessed.  (Greenstone Decl. ¶17.)  The Parties then engaged in two mediations before extremely experienced TCPA mediators.  First, the parties mediated before the Hon. Leo Papas (Ret.) of Judicate West in March of 2017.  (*Id.*)  When the case did not settle Class Counsel again persisted, setting another mediation for May 2017 before the Hon. Edward A. Infante (Ret.) of JAMS, at which a settlement was achieved.  (*Id.*)

Simply put, Class Counsel persisted at every step and refused to let adversity get in the way of progress.  It is a testament to Class Counsel's skill that, while this Action was stayed—and after the FCC issued an order granting, in part, Mammoth's petition in October 2016—Class Counsel was able to convince Mammoth to participate in two mediations and ultimately settle the case.

Of further testament to Class Counsel's skill is the quality of opposing counsel in this action.  *See Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 449 (E.D. Cal. 2013) ("The quality of opposing counsel is important in evaluating the quality of Class Counsel's work.").  Kirkland & Ellis LLP is a renowned national defense firm with significant experience in defending all types of consumer class actions.  Moreover, they devoted substantial resources to the defense, going so far as to petition the FCC on the critical issue of consent.  Mayer Brown, which assisted with Mammoth's representation before the FCC, is also a highly vaunted national law firm.  Class Counsel's ability to obtain a favorable settlement despite Defendant's highly resourced elite legal team is an additional indicator of their skill and quality of work.  *See, e.g.*, *Knight v. Red Door Salons, Inc.*, No. 08-01520, 2009 WL 248367, at *6 (N.D. Cal.

Feb. 2, 2009) (where defense counsel "understood the legal uncertainties in this case[] and were in a position to mount a vigorous defense," the favorable class settlement was "some testament to Plaintiffs' counsel's skill"); *see also Lofton v. Verizon Wireless (VAW) LLC*, No. 13-05665, 2016 WL 7985253, at *1 (N.D. Cal. May 27, 2016) (the "risks of class litigation against an able defendant well able to defend itself vigorously" support an upward adjustment in the award of fees).

### 3. The Risks of Litigation and the Novelty and Complexity of the Issues Justify the Requested Fees and Costs

"The risk that further litigation might result in Plaintiffs not recovering at all, particularly in a case involving complicated legal issues, is a significant factor in the award of fees." *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1046-7 (N.D. Cal. 2008) *citing Vizcaino*, 290 F.3d at 1048. Likewise, "the importance of ensuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who do accept matters on a contingent-fee basis a larger fee than if they were billing by the hour or on a flat fee." *Id.* at 1047; *see also* Morales, 2016 WL 6094504, at *7 ("Since class counsel took this case on a contingency basis, their risk of recovery was the same as the class members.").

If forced to proceed, Plaintiff would face substantial litigation risk due in part to complexities that are unique to this case. Although Plaintiff does not believe that Mammoth's retroactive waiver bars Plaintiff's claim or the claims of Class Members, this is an argument Mammoth indicated it would surely raise. (Greenstone Decl. ¶18.) Moreover, there is little law on this highly case-specific issue. If Plaintiff lost summary judgment on this issue, the case would be lost. Even if the Court were to determine that Plaintiff's claim is not barred by Mammoth's retroactive waiver, it could still potentially be used by Mammoth to challenge class certification. For example, Mammoth might argue that the Class is not certifiable because, given the retroactive waiver, it is necessary to analyze how Mammoth obtained each individual Class Member's number (to determine if the waiver applies). Mammoth might also argue that Plaintiff is not typical of the other Class Members. And there is always the risk that other issues might come to light through discovery that would hinder Plaintiff's ability to bring a successful motion for class certification. In addition, the basis of Plaintiff's case—the FCC's written consent rule—is itself subject to possible future challenge in the ever shifting sands of TCPA jurisprudence. *See, e.g., Bais Yaakov of*

*Spring Valley v. FCC*, 852 F.3d 1078 (D.C. Cir. 2017) (holding that FCC exceeded its authority when it promulgated rule requiring businesses to include opt-out notices on solicited fax advertisements).

In short, the fact that Class Counsel faced significant risks in bringing and maintaining this Action—which was exacerbated by the fact that they took this Action on a contingency basis—supports the requested fee award. *Morales*, 2016 WL 6094504, at *7 (awarding class counsel fees amounting to 25% of the $3.25 million settlement fund where counsel took the case on a contingency basis and faced significant risks in litigating the matter); *Wannemacher*, WL 12586117, at *9 (awarding class counsel 25% in attorneys' fees  where they took the case on a "purely contingent basis" and "devoted time, money, and resources to th[e][] matter despite risk of non-payment").

### 4.   Awards in Similar Cases Demonstrate the Requested Fees are Reasonable

The Ninth Circuit recognizes 25% of the common fund as a "benchmark," which can be adjusted upward or downward based on the circumstances of the case. *Vizcaino*, 290 F.3d at 1047.  However, "in most common-fund cases, the award exceeds that benchmark." *Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1047.  Thus, Class Counsel is requesting the 25% benchmark percentage of fees normally awarded in class-action law suits of this kind, which is justified in light of the fee awarded in comparable TCPA class-actions that have settled.[7]

### B.   A Lodestar Cross-Check Confirms the Reasonableness of the Requested Fees

To calculate the lodestar, the Court "multipl[ies] the number of hours the prevailing party reasonably expended on the litigation … by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011).  This base "unadorned" lodestar figure is "presumptively reasonable." *Id.*  The court may then "adjust [the lodestar]

---

[7] *See e.g., Wannemacher*, 2014 WL 12586117 at *8-10 (approving an award of $258,750 or 25% of the $1.035 million Settlement Fund, and in so doing recognized that this settlement was well within the range of awards made in similar TCPA class actions); *Lo v. Oxnard European Motors, LLC*, No. 11CV1009 JLS MDD, 2012 WL 1932283, at *3 (S.D. Cal. May 29, 2012) (approving a fee award of 25% after only two months of litigation where the settlement is "exceptionally favorable to the settlement class members" because the amount each settlement class member is entitled to "appears to be significantly more than class members typically receive in settlements of like actions"); *Grannan*, 2012 WL 216522, at *10-11 (finally approving the settlement and awarding attorney's fees of 25% or $250,000 of the $1 million settlement fund); *Bayat*, 2015 WL 1744342, at *6 (granting final approval of the class action settlement and awarding $838,386 in attorney's fees or 25% of the common fund amount).

upward or downward by an appropriate positive or negative multiplier" to reflect a host of 'reasonableness' factors, 'including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment.'" *Id.*

Class Counsel has invested approximately 1,337.87 hours prosecuting Plaintiff's claims through January 24, 2018, and have a lodestar of $861,313.09.  (Greenstone Decl. ¶42; Zelenski Decl. ¶¶14-27.) Although Class Counsel is "not required to record in great detail how each minute of his time was expended" Class Counsel has provided summaries of their work in order to "identify the general subject matter of [their] time expenditures."  *Hensley v. Eckerhart*, 461 U.S. 424, 437 n. 12 (1983); *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000) ("a summary of the time spent on a broad category of tasks such as pleadings and pretrial motions" met "basic requirement" of documentation).  Additionally, Class Counsel expects to spend about another 40 hours finalizing and filing the motion for final approval, communicating with Settlement Class Members, attending the Final Fairness Hearing, and tending to any claims-administration issues that arise.

Class Counsels' requested attorneys' fee award here is $937,500, which represents application a very modest multiplier of approximately 1.09 to Counsel's current lodestar.  Thus, although the circumstances of this Action warrant a substantial positive multiplier, Class Counsel is not seeking one, and for that reason as well the requested fee is more than reasonable.  *See e.g. Vizcaino*, 290 F.3d at 1051 n. 6 (holding that in the Ninth Circuit, multipliers "ranging from one to four are frequently awarded" and affirming multiplier of 3.65); *Steiner v. Am. Broad. Co.*, 248 F. App'x 780, 783 (9th Cir. 2007) (approving multiplier of approximately 6.85 finding it "falls well within the range of multipliers that courts have allowed"); *Grannan*, 2012 WL 216522, at *10 (finding a multiplier of 1.47 was "well within the range of permissible multiples").

### 1.      The Hours Class Counsel have Expended are Reasonable

Plaintiff's Counsel's lodestar of $861,313.09 reflecting 1,337.87  hours worked is reasonable. The appropriate number of hours includes all time "reasonably expended in pursuit of the ultimate result achieved in the same manner that an attorney traditionally is compensated by a fee-paying client for all time reasonably expended on a matter."  *Knox v. Chiang*, No. 2:05-CV-02198-MCE, 2013 WL 2434606, at *4 (E.D. Cal. June 5, 2013) *citing Hensley*, 461 U.S. at 431.  In determining the reasonableness of the

hours worked, the district court can "exclude hours 'that are excessive redundant, or otherwise unnecessary'" but it "need not, and should not, become green-eyeshade accountants." *Id.* (citations omitted). Indeed, the Ninth Circuit has found that courts should defer to successful counsel's judgment as to how much work was needed to succeed. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) ("By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker."). Class Counsel's hours are not excessive or otherwise unnecessary.

Class Counsel has exerted extraordinary efforts to achieve the results here. These efforts included, *inter alia*, researching and filing the class-action complaint, which was subsequently amended to conform to facts learned by Class Counsel during litigation; opposing a motion to stay; filing a surreply to the motion to stay; filing an *ex parte* application and motion to compel the deposition of a key defense witness and taking the deposition; opposing Mammoth's petition before the FCC; engaging in protracted settlement negotiations with Mammoth; coordinating, briefing and attending two full-day mediations; documenting the settlement; moving for preliminary approval and attending the preliminary approval hearing; working with the Settlement Administrator to ensure the proper administration of the settlement process; responding to Class Member inquiries regarding the Settlement; and, preparing the instant final approval and fee briefing. (Greenstone Decl. ¶¶12-20.) Attorneys have reported far more hours, and received larger fee awards, in cases in which substantially less actually happened. *See, e.g., Browne v. American Honda Motor Co.*, 2010 U.S. Dist LEXIS 144823, at *5 (C.D. Cal. Oct. 5, 2010) (approving plaintiff's counsel's 3,201 reported hours and award of $2 million in fees after application of a 1.5 multiplier in action that settled soon after complaint was filed without contested motion practice). Accordingly, Class Counsels' hours are reasonable and should be approved.

### 2.    Class Counsel's Rates Are Reasonable

Class Counsel's hourly rates, which have been computed based on the Laffey Matrix as adjusted for the Sacramento area, range from $841.54 for the most senior partner to work on the case, to $349.67 for junior associates, and are also reasonable.[8] "Courts may find hourly rates reasonable

---

[8] Four attorneys at the partner/senior counsel level worked on this matter for Class Counsel. One who has approximately 23 years of experience is billed at $841.54; the other three are billed at $698.36.

1   based on evidence of other courts approving similar rates or other attorneys engaged in similar

2   litigation charging similar rates." *McIntosh v. McAfee, Inc.*, No. C06-07694 JW, 2009 WL 673976, at

3   *2 (N.D. Cal. Mar. 13, 2009) (citing *Ackerman v. Western Electric Co.*, 860 F.2d 1514, 1520 (9th Cir.

4   1988);  *Parkinson v. Hyundai Motor Am.,* 796 F.Supp.2d 1160, 1172 (C.D. Cal. 2010).

5        Here, Plaintiff's Counsel's rates have been approved by multiple other courts, (Greenstone

6   Decl. ¶37; Zelenski Decl. ¶27), and are consistent with other attorneys engaged in similar complex

7   litigation.  *See e.g.*, *Garcia v. Gordon Trucking, Inc.*, No. 1:10-CV-0324 AWI SKO, 2012 WL 5364575,

8   at *9 (E.D. Cal. Oct. 31, 2012) (finding the higher rate of $650 an hour for the attorneys from Patterson

9   Law Group was justified because "they fall within the range set forth for attorneys of their respective

10  experience and qualifications in the Laffey Matrix, a widely recognized compilation of attorney and

11  paralegal rate data frequently used in fee awards cases); *Barbosa*, 297 F.R.D. 431, 453 (E.D. Cal. 2013)

12  (approving a rate of $720 an hour for a senior partner with 21 years of experience and $700 for an

13  associate with eight years of experience); *In re High-Tech Employee Antitrust Litigation*, 2015 WL

14  5158730, at *9 (N.D. Cal. 2015) (finding reasonable "billing rates for partners [that] range from about

15  $490 to $975 . . . billing rates for non-partner attorneys, including senior counsel, counsel, senior

16  associates, associates, and staff attorneys, [that] range from about $310 to $800, with most under

17  $500 … [and] billing rates for paralegals, law clerks, and litigation support staff [that] range from

18  about $190 to $430, with most in the $300 range."); *Kearney v. Hyundai Motor America,* 2013 WL

19  3287996, at *8 (C.D. Cal. June 28, 2013) (approving hourly rates between $650 and $800 for class

20  counsel in a consumer class action); *In re Cathode Ray Tube (CRT) Antitrust Litigation*, 2016 WL

21  4126533, at *7 (N.D. Cal. 2016) ("billing rates between $350 and $875 are reasonable within this legal

22  market for cases of this size, type, and complexity").

23       Additionally, when the lodestar is being used as a cross-check, courts in the Eastern District

24  have recognized that the Laffey Matrix, as explained more fully below, can be used as a general way to

25  examine the reasonableness of hourly rates.  *See Bond v. Ferguson Enterprises, Inc*., No. 1:09-CV-1662

26  OWW MJS, 2011 WL 2648879, at *12 (E.D. Cal. June 30, 2011) (using the Laffey Matrix as a general

27  way to examine the reasonableness of counsel's hourly rates and approving rates of up to $675 for

28  partners and $261 for an associate); *Collins v. Cargill Meat Sols. Corp*., No. 1:10-CV-00500 OWW,

MOTION FOR ATTORNEYS' FEES AND EXPENSES; MEMORANDUM IN SUPPORT

1   2011 WL 2580321, at *11 (E.D. Cal. June 28, 2011) (approving rates ranging from $450 to $520 an hour

2   because they fall within the reasonable rates of the Laffey Matrix as adjusted by the difference between

3   the cost of living increase provided to Judicial branch employees in the Washington D.C. area and that

4   provided to employees in the Los Angeles area); *Garcia v. Gordon Trucking, Inc*., No. 1:10-cv-0324-

5   AWI-SKO, 2012 WL 5364575, at *9 (E.D. Cal. Oct. 31, 2012) (approving rates of $650 an hour based

6   for attorneys from the Patterson Law Group because they fall within the range set forth for attorneys of

7   their respective experience and qualifications in the Laffey Matrix).

8           The Laffey Matrix, named for the case that generated the index, *Laffey v. Northwest Airlines, Inc.,*

9   572 F. Supp. 354 (D.D.C. 1983), is "a widely recognized compilation of attorney and paralegal data …,

10  which is regularly prepared and updated by the Civil Division of the United States Attorney's Office for

11  the District of Columbia."  *Trujillo v. Singh*, No. 1:16-CV-01640LJO-EPG, 2017 WL 1831941, at *2

12  (E.D. Cal. May 8, 2017).  Because the reasonableness of the hourly rates should be according to the

13  prevailing market rates in the relevant legal community, (*Blum v. Stenson*, 465 U.S. 886, 895 (1984))—

14  *i.e.*, the forum where the district court sits, (*Valentin v. Grant Mercantile Agency, Inc.*, No. 1:17-CV-

15  01019-AWI-SKO, 2017 WL 6604410, at *9 (E.D. Cal. Dec. 27, 2017)—the Laffey Matrix rates should

16  be adjusted for the Sacramento area.  The rates set forth in the Laffey Matrix can be adjusted to areas

17  outside of the District of Columbia by "using the [U.S. Office of Personnel Management's ("OPM")]

18  Locality Pay Tables," and by following the formula used by Chief Judge Walker in *In re HPL*

19  *Technologies, Inc. Securities Litigation*, 366 F. Supp. 2d 912 (N.D. Cal. 2005), and *In re Chiron Corp.*

20  *Securities Litigation*, 2007 4249902 (N.D. Cal. Nov. 30, 2007).

21          In *In re Chiron Corp. Securities Litigation*, Chief Judge Walker recognized that the District of

22  Columbia has a somewhat lower cost of living than Los Angeles and adjusted these figures accordingly

23  using the locality pay differentials published by the OPM.  *In re Chiron Corp. Sec. Litig.*, 2007 WL

24  4249902 at *6.  According to the OPM's data for 2007, the Washington, D.C. area had a +18.59%

25  locality pay differential while the Los Angeles area had a +24.03% locality pay differential.  *Id.*  Using

26  those figures, the court computed an upward 4.6% cost-of-living adjustment (= (124.03 − 118.59) ÷

27  118.59 = .0459, or 4.6%).  *Id.*  "Adjusting the Laffey [M]atrix figures accordingly" therefore yielded the

28  following difference in rates between Washington D.C.- and Los Angeles-area attorneys:

| In re Chiron Corp. Sec. Litig. 2007 Rates | | |
|---|---|---|
| Experience | D.C. Hourly Rates | Los Angeles Hourly Rates |
| 20+ Years | $440.00 | $460.24 |
| 11–19 Years | $390.00 | $407.94 |
| 8–10 Years | $315.00 | $329.49 |
| 4–7 Years | $255.00 | $266.73 |
| 1–3 Years | $215.00 | $224.89 |

*Id.* at *6–7.

Of course, more than a decade has passed since *In re HPL Technologies, Inc. Securities Litigation* and *In re Chiron Corp. Securities Litigation*. Additionally, since that time, an "[A]djusted Laffey Matrix" has been published based on an updated "methodology advocated by economist Dr. Michael Kavanaugh," which "has been used by the United States District Court for the District of Columbia to determine the amount of a reasonable fee." *Bywaters v. United States*, 670 F.3d 1221, 1226 n.4 (Fed. Cir. 2012). As explained by the Federal Circuit, the Adjusted Laffey Matrix[9] "more accurately reflects the prevailing rates for legal services." *Id. See also, e.g., Recouvreur v. Carreon*, 940 F. Supp. 2d 1063, 1070 (N.D. Cal. 2013); *Hash v. United States*, 2012 WL 1252624 at *22 (D. Idaho Apr. 13, 2012) (agreeing that the Adjusted Laffey Matrix "is the most accurate representation of rates for legal services . . . [,] giv[ing] weight to the Federal Circuit's recent statement implying acceptance of the use of the Updated Laffey Matrix").

Therefore, using the current Adjusted Laffey Matrix covering attorney hourly rates from June 1, 2017, to May 31, 2018, and the current OPM tables for the Sacramento area and the Washington D.C. area[10], the Adjusted Laffey Matrix should be adjusted downward by 2.6% (= (124.86 – 128.22) ÷ 128.22 = -.0262, or -2.6%) to account for the lower cost of living in Sacramento, as follows[11]:

| June 1, 2017, Through May 31, 2018, Adjusted Laffey Matrix for D.C. and Sacramento | | |
|---|---|---|
| Experience | D.C. Hourly Rate | Sacramento Hourly Rate |
| 20+ Years | $864.00 | $841.54 |
| 11–19 Years | $717.00 | $698.36 |
| 8–10 Years | $636.00 | $619.46 |
| 4–7 Years | $440.00 | $428.56 |
| 1–3 Years | $359.00 | $349.67 |

---

[9] Zelenski Decl. Ex. A.

[10] *Id.* at Ex. C & Ex. B, respectively.

[11] According to the OPM's data for 2018, the Washington, D.C. area had a +28.22% locality pay differential while the Sacramento area had a +24.86% locality pay differential. Zelenski Decl. ¶26.

1    Based on the methodology above, Class Counsel's application of the current Adjusted Laffey

2    Matrix rates for the Sacramento area, and the resulting rates and lodestar, are fair and reasonable.

3    **IV.    CLASS COUNSEL'S REQUESTS FOR EXPENSES ARE REASONABLE**

4        Rule 23(h) also permits the Court to "award . . . nontaxable costs that are authorized by law or

5    by the parties' agreement." Fed. R. Civ. P. 23(h).  Paragraph 87 of the proposed Settlement permits

6    Class Counsel to seek reimbursement of their reasonable expenses supported by declaration.  Attorneys

7    who create "a common fund for the benefit of the class [are] entitled to reimbursement of reasonable

8    litigation expenses from that fund." *Arredondo v. Delano Farms Co*., No. 1:09-CV-01247-MJS, 2017

9    WL 4340204, at *6 (E.D. Cal. Sept. 29, 2017).  Class Counsel has incurred expenses in the prosecution

10   of this action in the total amount of $24,436.60, which represent less than 3% of the combined lodestar

11   of Class Counsel.  All the expenses are described in the accompanying declarations of Class Counsel.

12   (Greenstone Decl. ¶¶38-41; Zelenski Decl. ¶¶29-30.)  These expenses were reasonable and necessary

13   for the prosecution of this action and therefore should be approved.

14   **V.    THE REQUESTED SERVICE AWARD FOR THE CLASS REPRESENTATIVE IS
        REASONABLE AND SHOULD BE APPROVED**

15       Upon the conclusion of a successful class-action, the Court may award the representative

16   plaintiff a service award (also known as an incentive payment) for the work done on behalf of the class.

17   *See Rodriguez*, 563 F.3d at 958 ("Incentive awards are fairly typical in class action cases.").

18       Here, Plaintiff seeks a service award of $5,000.  Such an award is regularly granted by district

19   courts in TCPA class-action settlements.  *See*, *e.g.*, *James v. J.P. Morgan Chase Bank, N.A.,* No. 8:15-

20   cv-2424, 2017 WL 2472499 at *2 (M.D. Fla. Jun. 5, 2017)("The two class representatives . . . request an

21   'incentive award' of $5,000 each.  As the class representatives correctly observe, a $5,000 fee 'is in line

22   with . . . incentive awards that courts have approved in comparable TCPA matters."); *Wilkins v. HSBC*

23   *Bank Nevada, N.A.*, No. 1:14-cv-00190, 2015 WL 890566 (N.D. Ill. Feb. 27, 2015)($5,000 awarded to

24   two class representative in TCPA action); *Ott v. Mortgage Investors Corporation of Ohio Inc*., No. 3:14-

25   cv-00645, 2016 WL 54678 at*7 (D. Ore. Jan. 5, 2016)($5,000 incentive payments awarded to each of the

26   two class representatives).  Courts in the Ninth Circuit routinely grant similar incentive awards in class

27   actions.  *See*,   *e.g.*,   *Staton*,   327   F.3d   at   977;   *Ogbuehi   v.   Comcast   of*

28

1  *California/Colorado/Florida/Oregon, Inc*., No. 2:13-CV-00672-KJM, 2015 WL 3622999, at *14 (E.D.
2  Cal. June 9, 2015) (approving incentive award of $5,000);  *In re Mego Fin. Corp. Sec. Litig*., 213 F.3d
3  454, 463 (9th Cir. 2000) (approving incentive awards of $5,000 each to the two class representatives);
4  *Ontiveros v. Zamora*, 303 F.R.D. 356, 366 (E.D. Cal. 2014) (approving an incentive award of $13,550 for
5  the named plaintiff).

6      Here, Plaintiff invested his time into this litigation, as described in his Declaration.  (*See*
7  *generally* Declaration of Paul Story.)  He took personal time to speak with Class Counsel, search for
8  relevant evidence, review and approve the complaints for filing, and keep abreast of the litigation for
9  over three years.  (*Id*.)  This sacrifice was made to support a case in which he had a relatively modest
10  personal interest, but that has provided benefits to thousands of Settlement Class Members and the
11  general public nationwide, and warrants the Court's approval of the requested service award.  Given
12  Plaintiff's contribution to the successful prosecution of this action, taking on a popular but powerful
13  corporation, Plaintiff should be granted a service award in the amount of $5,000.

14  **VI.    CONCLUSION**

15      For the foregoing reasons, Plaintiff respectfully requests that the Court grant this Motion and
16  award: (1) $937,500 to Class Counsel in attorneys' fees; (2) $24,436.60 to Class Counsel for
17  reimbursement of expenses; and (3) a $5,000 service award to Plaintiff to be paid from the Settlement
18  Fund.

19  Dated:  January 26, 2018        JAURIGUE LAW GROUP
20                           GLANCY PRONGAY & MURRAY LLP

21                             /s/ *Mark S. Greenstone*
                        Michael J. Jaurigue, Abigail A. Zelenski, David Zelenski
22                          Lionel Z. Glancy, Mark S. Greenstone
                        *Attorneys for Plaintiff*

## **PROOF OF SERVICE BY ELECTRONIC POSTING**

I, the undersigned say:

I am not a party to the above case, and am over eighteen years old.  On January 26, 2018, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Eastern District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on January 26, 2018, at Los Angeles, California.


                                        *s/ Mark S. Greenstone*
                                        Mark S. Greenstone

# Mailing Information for a Case 2:14-cv-02422-JAM-DB Story v. Mammoth Mountain Ski Area, LLC

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Lionel Z. Glancy**
  lglancy@glancylaw.com,info@glancylaw.com

- **Mark Samuel Greenstone**
  mgreenstone@glancylaw.com

- **Jordan M. Heinz , PHV**
  jordan.heinz@kirkland.com,emily.malloy@kirkland.com

- **Michael Joe Jaurigue**
  michael@jlglawyers.com,nefertari@jlglawyers.com

- **Jeffrey L. Willian , PHV**
  jwillian@kirkland.com

- **Abigail Ameri Zelenski**
  abigail@jlglawyers.com

- **David S Zelenski**
  david@jlglawyers.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)