```
 1                IN THE UNITED STATES DISTRICT COURT
                FOR THE EASTERN DISTRICT OF CALIFORNIA
 2            BEFORE THE HONORABLE JOHN A. MENDEZ, JUDGE

 3                            ---o0o---

 4
     PAUL STORY, individually and
 5   on behalf of all others similarly
     situated,
 6
             Plaintiffs,
 7
     Vs.                                  CASE NO. 2:14-CV-2422 JAM
 8
     MAMMOTH MOUNTAIN SKI AREA, LLC,
 9   a Delaware limited-liability
     company,
10
             Defendant.
11   _____/

12                            ---o0o---
                   REPORTER'S TRANSCRIPT OF PROCEEDINGS
13                    RE:  FINAL APPROVAL HEARING
                    TUESDAY, MARCH 13, 2018, 1:30 P.M.
14                            ---o0o---

15   APPEARANCES:
     For the Plainiffs:       GLANCY PRONGAY & MURRAY LLP
16                            1925 Century Park East, Suite 2100
                              Los Angeles, California  90067
17                            BY:  MARK GREENSTONE, Atty. At

18                            JAURIGUE LAW GROUP
                              300 W. Glenoaks BLVD., Suite 300
19                            Glendale, California  91202
                              BY:  DAVID ZELENSKI, Atty. At Law
20
     For the Defendants:      KIRKLAND & ELLIS LLP
21                            555 California Street, Suite 2700
                              San Francisco, California  94104
22                            BY:  JORDAN M. HEINZ, Atty. At Law

23   Reported by:  CATHERINE E.F. BODENE, CSR #6926, RPR
                   Official Court Reporter USDC, 916-446-6360
24                 501 I Street, Room 4-200
                   Sacramento, California  95814
25   TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION
```

```
 1        SACRAMENTO, CALIFORNIA, TUESDAY, MARCH 13, 2018, 1:30 P.M.
 2                              ---o0o---
 3              THE CLERK:  You may remain seated.  Court is in
 4   session.  The Honorable John A. Mendez presiding.
 5              Calling Civil 14-2422, Story versus Mammoth Mountain
 6   Ski Area.
 7              Counsel, state your appearances please.
 8              MR. ZELENSKI:  Your Honor, good afternoon.  David
 9   Zelenski and Mark Greenstone on behalf of the plaintiff.
10              THE COURT:  Good afternoon.
11              MR. HEINZ:  Good afternoon, Your Honor.  Jordan Heinz
12   on behalf of Mammoth Mountain Ski Area.
13              THE COURT:  Good afternoon.
14              All right.  This is on this afternoon on plaintiff's
15   motion for final approval of a class action settlement and also
16   approval of attorney's fees in the settlement.
17              The motion is not opposed by Mammoth, correct?
18              MR. HEINZ:  Correct, Your Honor.
19              THE COURT:  I've reviewed the points and authorities,
20   the one notice that you received from a class member that you
21   responded to, and then the motion for attorney's fees.
22              I didn't get proposed orders.  Normally I get those.
23   Is there some reason I didn't get those?
24              MR. ZELENSKI:  Your Honor, the proposed order was
25   actually submitted.  There were two proposed orders, the order
```

1   granting final approval and the proposed final judgment.  Both
2   of those were submitted in connection with the preliminary
3   approval papers.
4          I have brought copies of the proposed order granting
5   final approval and the proposed final judgment.  The reason we
6   held off on submitting those again electronically is there were
7   certain blank spaces that we needed to fill in on the basis of
8   information now supplied to us by the settlement administrator
9   as of this morning.
10         And I've brought redline copies if Your Honor would
11  like to review the differences between what was originally
12  submitted and what's been submitted -- or the changes that have
13  been made now in light of the supplemental information that has
14  been supplied by the settlement administrator.
15         THE COURT:  Okay.  I have those in front of me from
16  the preliminary papers.
17         Why don't you give them to Mr. Vine.
18         MR. ZELENSKI:  Would you also like the redline copies?
19         THE COURT:  Both.  Yeah.  Thanks.
20      (Documents handed up to the clerk.)
21         Thanks.
22      (Documents handed to the court for review.)
23      (Brief pause.)
24         Okay.  I appreciate the orders and the blanks being
25  filled in.

1          Based on my review of the papers, the settlement
2 itself should definitely be approved.  And I do find, as the
3 proposed order sets forth, that it is apparent to the court
4 that the attorneys worked diligently and made a great effort in
5 trying to resolve this, and the resolution is clearly fair with
6 respect to all parties involved.
7          The order that's proposed contains the requisite
8 findings.  The court agrees with the findings.  I'm pleased to
9 see that any remaining amounts will go to Public Counsel.  It
10 is an excellent organization, so I'm glad you agreed on that.
11 And so I'm prepared to sign the order.
12          I want to make the following comments with respect to,
13 first, that the one objection that you received and the
14 response that you made to the objection is clearly an
15 appropriate response.
16          The objection was untimely.  It is more really a
17 political objection as opposed to a legal objection, so the
18 court finds the response to be appropriate and the objection
19 really has not been and need not be considered by the court.
20          My concern with the attorney's fees is simply to make
21 a record.  I don't think the amount sought is inappropriate, at
22 all, based on the fact that this is a class action.  And so I
23 clearly would find the amount awarded within the range of
24 amounts that even this court has awarded with respect to class
25 actions.

1    But I'm only approving the amount based on that fact,
2    that this is a class action, and that the amount being sought,
3    which is equal to about 25 percent of the settlement fund, is
4    certainly appropriate and should be authorized and is well
5    deserved.
6        What I don't agree with, and I don't want the record
7    to in any way reflect, and this case should never be cited as
8    approval by this court, is as to the hourly rates.  And I
9    appreciate the fact that you submitted in such great detail the
10   amount of hours and the rates and the discussion regarding
11   those rates.  But again, this case should never be cited for
12   authority that this court -- I don't speak for my other
13   district judges -- but under no circumstances would I ever
14   approve an hourly rate of 800 and -- it is a really weird
15   amount actually.  Maybe you can, just out of curiosity, explain
16   to me why it is such a funny rate.
17         MR. ZELENSKI:  Your Honor, I believe you're referring
18   841.54, to help you out?
19         THE COURT:  Here it is on page 13.
20         Yeah.  An hourly rate of 864, adjusted for Sacramento
21   to 841.54.  That is just based on the Laffey, L-a-f-f-e-y,
22   Matrix?
23         That's how you came up with that amount?
24         MR. ZELENSKI:  Correct.
25         THE COURT:  So $864 an hour seems unusual to me.  I'm

1  just asking out of curiosity.  717?  636?  Those all seem
2  really --
3       MR. ZELENSKI:  The reason those numbers sort of end in
4  random integers is that when you apply the cost of living
5  adjustment that was adopted by other district courts in
6  California for purposes of adjusting the rate set forth in the
7  adjusted Laffey Matrix up or down so that they account for cost
8  of living differences between wherever the action is pending
9  versus the Washington, D.C. area where the Laffey Matrix was
10 devised, more often than not you end up with figures that come
11 out to look like 841.54 as opposed to a round number.  It's
12 just a product of the math.
13      THE COURT:  Okay.  But as I was saying, I never have,
14 and most likely never will, approve an hourly rate in the
15 amounts that are reflected in the motion for attorney's fees.
16      So I wouldn't approve this based on a lodestar method
17 only because, despite even this Laffey Matrix evidence, I've
18 yet to see a case in Sacramento that has specifically approved
19 anything over, I think it is, the highest I have seen is 500,
20 maybe $550 an hour in a non-class action case.
21      Interestingly enough, I'm addressing the Federal Bar
22 Association next month, if you would like to attend, on motions
23 for attorney's fees --
24      MR. ZELENSKI:  Certainly.
25      THE COURT:  -- if you're up in the area.

1          I've reviewed almost all our courts' attorney's fees
2   motions over the past few years.  We're slowly coming into the
3   21st Century in Sacramento, speaking of someone who actually
4   practiced law down in the Bay Area, so we're up above $350 an
5   hour for lawyers with 20 to 30 years experience.  And again, I
6   think the highest rate I've seen so far is $550.
7          I recognize that Los Angeles and San Francisco, the
8   Northern District and the Central District, have approved and
9   probably would approve without any problem these rates, but in
10  Sacramento, in some ways -- and the record will reflect I'm
11  smiling -- takes pride in the fact that we lower attorney's
12  fees on attorney's fees motions to a more reasonable hourly
13  rate.
14         That having been said, I want to make clear that my
15  decision to approve the attorney's fees motion is based on the
16  fact that this is a class action, not based on the lodestar
17  method, and shouldn't be cited for that purpose.
18         All that having been said, it is still more than
19  deserved, more than reasonable and certainly worthy of the
20  court's approval.
21         I do appreciate the efforts that both sides made in
22  resolving this case.  I can't tell you how much truly we
23  appreciate it in Sacramento when you take difficult and complex
24  cases like this and work hard to resolve it.  So to all
25  counsel, thank you so much for working hard.

```
1              I will sign the orders.  We'll get them on the docket.

2    The matter will be approved, and hopefully you can get this

3    money distributed quickly to the class members.

4              Anything else?

5              MR. HEINZ:  Nothing for defendant.

6              MR. ZELENSKI:  Nothing on behalf of the plaintiff.

7              THE COURT:  Thank you very much, gentlemen.

8              Thank you for coming up.

9         (Matter concluded.  Off the record at 1:45 p.m.)

10                             ---o0o---

11

12

13

14                       REPORTER'S CERTIFICATE

15                             ---o0o---

16
     STATE OF CALIFORNIA  )
17   COUNTY OF SACRAMENTO )

18

19         I certify that the foregoing is a correct transcript
     from the record of proceedings in the above-entitled matter.
20
            IN WITNESS WHEREOF, I subscribe this certificate at
21   Sacramento, California.

22


23      /S/_Catherine E.F. Bodene_____
            CATHERINE E.F. BODENE, CSR NO. 6926
24          Official United States District Court Reporter

25
```